SETH L. JENKINS et al., appellants,

*v.*

THE GUARANTEE TRUST AND SAFE DEPOSIT COMPANY
and THE PRESBYTERIAN HOSPITAL, respondents.

M., by a will made five days before her death, gave to the Presbyterian Hospital a legacy of $5,000, and directed it to be paid out of her residuary estate, which consisted of certain lands situated in this state. The testatrix, at the time of her death, was a resident of and was domiciled in the State of Pennsylvania, and the Presbyterian Hospital was a Pennsylvania corporation. By a statute of that state any testamentary gift to a body politic, or to any person in trust for religious or charitable uses, is void, unless the will be made at least one calendar month before the decease of the testator.—*Held*, that the validity of such legacy, being a gift of money, is to be determined by the law of the domicil of the testatrix, notwithstanding the fact that it is necessary to sell lands in this state for the payment thereof, and that, consequently, it is void by force of the Pennsylvania statute.

---

On appeal from a decree advised by Vice-Chancellor Pitney, who delivered the following opinion:

This is a bill filed by a trustee asking the direction of the court in the disposition of the trust property.

The facts are as follows:

Some years ago Gifford J. Maxwell and his wife, Margaret K. Maxwell, domiciled in Pennsylvania, executed a deed of trust conveying certain land in New Jersey to the complainant as trustee, *inter alia,* to hold for the lives of the grantors or for that of the survivor, and at the death of the survivor

" of the said Gifford J. Maxwell and Margaret K., his wife, to hold the said trust estate in trust for the same person or persons and for such estate and estates as, and in the same way and manner as, *such survivor may by any instrument, in the nature of a last will and testament, direct, limit and appoint.* And in default of such appointment " &c.

Margaret K. Maxwell survived her husband many years and died in the city of Philadelphia, having executed a will five days before her death, in which, after a few specific bequests and a recital of the power contained in the deed of trust, she wrote as the third item:

" Now, therefore, as such survivor, and in exercise and pursuance of said above recited power and authority, I hereby direct, limit and appoint and I devise the said trust estate and lands in said deed mentioned, and I also give, devise and bequeath all the rest and residue of my estate, real and personal, to the Guarantee Trust & Safe Deposit Company, their successors and assigns in trust to hold the same, invest and reinvest the same in good securities, such as they may in their judgment deem safe and proper, whether designated or not as legal investments, to let and demise the real estate, receive the rents and income thereof, and after paying thereout all taxes and necessary expense, to pay over out of said net income the sum of Two Hundred and Sixty Dollars to my father John H. Jenkins of Beloit, Wisconsin, for the term of his life, and subject to such charge I give, devise and bequeath my said residuary estate, and I direct my said trustee to pay out of the same the following legacies, viz.: *To the Presbyterian Hospital in Philadelphia the sum of Five Thousand Dollars,* to endow a free bed, in perpetuity, said free bed to be known as the 'Mary Groesbeck Maxwell Bed.' The portrait of my said daughter Mary hereinabove given to said Hospital shall be placed above said bed of the ward."

Here follow various pecuniary legacies to various people. Then the testatrix adds:

Jenkins v. Guarantee Trust and Safe Deposit Co.

"I direct that the legacies above given in this third item of my will (that is, the legacy to the Hospital and the above pecuniary legacies) shall be paid clear of tax. But should my residuary estate be insufficient so to pay the same in full then and in such case the legacy of Five Thousand Dollars to the Presbyterian Hospital in Philadelphia shall be paid in full clear of tax, next the legacies given in said item to Dr. William Parrish, etc., etc., shall be paid in full clear of tax, the other legacies to abate *pro rata*. And after payment out of my residuary estate of said legacies and collateral tax thereon as above-directed should any of said residue still remain undisposed of, I give, devise and bequeath the same to" certain persons.

Then the testatrix further adds:

"I authorize and empower my executors and trustees for the purpose of paying debts and legacies and also for the general purposes of this will, when in their judgment it shall seem best for the best interest of my estate to sell at public or private sale all or any part of my real estate which I may own, or over which I may have any power of disposition, receive the purchase money, and upon receipt thereof execute good and sufficient deed or deeds to the purchaser therefor in fee simple, clear of all trusts and charges and without liability on the part of the purchaser to see to the application of the purchase money; the money to be applied to the purposes of this will."

The testatrix names as her executor and trustee the grantee named in the deed of trust, the complainant herein.

All the persons interested were made parties. Certain of the beneficiaries under the will of Mrs. Maxwell attack the bequest to the Presbyterian Hospital, on the ground that it is void by reason of the eleventh section of an act of the legislature of the State of Pennsylvania, in these words:

"That no estate, real or personal, shall hereafter be bequeathed, devised or conveyed to any body politic, or to any person in trust for religious or charitable uses, except the same be done by deed or will, attested by two credible, and at the same time disinterested, witnesses, at least one calendar month before the decease of the testator or alienor; and all dispositions of property contrary hereto, shall be void and go to the residuary legatee or devisee, next of kin, or heirs, according to law; provided, that any disposition of property within said period, *bona fide* made for a valuable consideration, shall not be hereby avoided."

Though Mrs. Maxwell, who executed the testamentary disposition here brought in question, was a domiciled resident of Pennsylvania, and most of the beneficiaries under her will, as-

well as the executor of it, are also residents of that state, the validity of the disposition in question must, for present purposes, be determined by the laws of this state where the lands affected by it are situate.

Upon the admitted facts there was not sufficient property, whether real or personal, belonging to the testatrix in Pennsylvania to pay her debts, so that there was nothing for the will to operate upon except the lands in New Jersey. That the laws of Pennsylvania restricting testamentary power can have no application or force in New Jersey seems to be too clear for debate. *Story Confl. L.* §§ *424, 427, 428, 445, 446; Whart. Confl. L.* §§ *273, 293, 296, 560; Westl. Pr. Int. Law* §§ *156, 165.*

In order to avoid the effect of this well-established rule, the learned counsel for the other legatees resorted to the doctrine of notional conversion, and contended, in an ingenious and able argument, that the effect of the disposition in question was to direct a sale of the lands in question, the effect of which, in turn, was to work an instantaneous conversion of the land into money, making it a movable instead of an immovable interest, and so at once to bring it within the jurisdiction of the *lex domicilii.*

The weakness of this argument lies in the assumption upon which it necessarily rests, that the conversion took place in the lifetime of Mrs. Maxwell. Her will took effect from her death, and there could be no conversion until it did take effect. The mere fact that she in her lifetime formed the intention to cause this land to be turned into money, and expressed that intention in writing in such a manner that it would be carried into effect after her death, did not work the conversion. That could only take effect at or after her death, which was a prerequisite. At the moment when she made the testamentary disposition in question, and every moment thereafter up to and including the moment of her death, this land remained land, both in fact and in equitable fancy, and, as such, subject to the laws of New Jersey. Mrs. Maxwell necessarily dealt with it as land, and, in converting it into money by her will, she was not only entitled to act in accordance with the laws of this state, but she was

obliged to do so. She could not make the conversion without. exercising dominion over the land, and that dominion she must and could exercise according to the laws of New Jersey.

Reliance was placed, in this connection, on the case of *Hand* v. *Marcy, 1 Stew. Eq. 59*, decided in 1877. In that case there was a direction to convert land into money, and there was a. bequest of the residue, which was composed in part of the proceeds of the sale of the land to three persons in equal shares, one of whom died in testator's lifetime, causing a lapse as to one-third of the residue. The question was whether this lapsed share· went to the next of kin or the heir-at-law. Chancellor Runyon held that it was converted into money and went to the next of kin. I do not find it necessary to determine whether or not that. decision can be sustained in view of the doctrine established in. *Ackroyd* v. *Smithson, 1 Bro. Ch. C. 503; White & T. Lead. Cas.. 872*, and the long line of cases which have followed it both in England and in this country, which are collected in the notes to the principal case in the leading cases in equity. *Ackroyd* v. *Smithson* was followed by Vice-Chancellor Van Fleet in *Roy·* v. *Monroe, 2 Dick. Ch. Rep. 356*, decided in 1890, and must. still be considered as authority in New Jersey.

But admitting that *Hand* v. *Marcy* was well decided, it still falls short of holding, what is necessary in order to make it at all affect the present case, that land can be considered as con-- verted into money before it is so converted.

Reference was also made to that class of cases in which the· courts have held that an alien who is debarred from becoming seized of land, as such, by devise or conveyance, may, neverthe-less, take under a will money which is the proceeds of the land sold for the purpose by order of the will. *Craig* v. *Leslie, 3· Wheat. 564; Du Hourmelin* v. *Sheldon, 1 Beav. 79; 4 Myl. &· C. 525; Anstice* v. *Brown, 6 Paige 448.* But those cases were decided in view of the policy of the several acts disenabling aliens to hold lands, which acts are not infringed by their· receiving money.

Undoubtedly they recognize the simple truth that where lands. have actually been sold and turned into money, which after–

wards is paid to a person, he actually receives money and not land.

But in truth the doctrine of notional conversion has no application to this case. Its proper office is to determine the devolution of a fund after it has once vested in interest in the beneficiary, but has not reached his actual possession. In such cases the question is whether the next of kin or heir of the deceased beneficiary shall take it, and that depends on whether it be considered as money or land. The general rule undoubtedly is that if, by the direction of the testator, the land is to be converted into money and paid to the beneficiary in money, it will be considered as having been so done, although not actually sold. On the other hand, if the purpose for which the land was to be sold has failed, it will still be considered as land, although actually turned into money. *Ackroyd* v. *Smithson, supra; Roy* v. *Monroe, supra.*

I find no difficulty in the other points raised by the counsel for the heirs-at-law. The deed of settlement, in the event which occurred, placed the disposition of this land in the power of Mrs. Maxwell, the legal title being in the complainant herein. Mrs. Maxwell, by her will, directed the legal title to be vested in the complainant as her executor, and if the case is to be considered as if the complainant was not the grantee of the deed of settlement, the result is, nevertheless, that it now holds it for the trusts declared in Mrs. Maxwell's will, and those are, for present purposes, first, to pay her debts; second, to procure an annuity of $260 for her father during his lifetime; (I say an "annuity," for although the word "annual" or any equivalent is not used in the will, yet it is clearly understood;) and, next, to pay $5,000 to the Presbyterian Hospital; and for other legacies.

No question was raised as to the jurisdiction of this court to direct the complainant herein, although a non-resident, nor do I think the jurisdiction questionable. The title being vested in the complainant subject to certain trusts, it was perfectly proper for it to come here to be directed in the execution of those trusts.

I will advise a decree accordingly.

*Mr. Edward H. Dudley, Mr. William H. Burnett* and *Mr. John Sparhawk, Jr.* (of the Philadelphia bar), for the appellants.

*Mr. Martin P. Grey* and *Mr. Arthur Biddle* (of the Philadelphia bar), for the respondents.

The opinion of the court was delivered by

GUMMERE, J.

This case presents for consideration the question of the validity of a legacy given to the Presbyterian Hospital, one of the respondents, by the will of Margaret K. Maxwell, a resident of the State of Pennsylvania, and who, at the time of her death, was domiciled in that state. The facts upon which the decision of this question turns are these:

In 1878, Mrs. Maxwell joined with her husband in executing a deed conveying to the Guarantee Trust and Safe Deposit Company (respondents herein) certain lands belonging to him and lying in New Jersey, in trust, to hold said lands for the benefit of the grantors, or the survivor of them, during their lives, and, at the death of the survivor, to hold the same for the benefit of such person as said survivor might by will appoint. And in default of such appointment &c.

Mr. Maxwell died in 1886, and, by his will, left all his estate, real and personal, to his wife. Mrs. Maxwell survived her husband several years, and died on August 8th, 1891, leaving a last will and testament, executed five days before her death, in which, among other things, after reciting the above power of appointment, she made the following provision:

"Now, therefore, as such survivor, and in exercise and pursuance of said recited power and authority, I hereby direct, limit and appoint, and I devise the said trust estate and lands in said deed mentioned, and I also give, devise and bequeath all the rest and residue of my estate, real and personal, to the Guarantee Trust and Safe Deposit Company [her executor] in trust, to hold the same &c., and I give, devise and bequeath my said residuary estate, and I direct my said trustee to pay out of the same the following legacies, namely: To the Presbyterian Hospital in Philadelphia the sum of five thousand dollars; to [certain other legatees] one thousand dollars each, &c.; after payment

·out of my said residuary estate of said legacies, should any of the residue remain undisposed of, I give, devise and bequeath the same and I direct my -said trustee to pay over and convey the same to and among my brothers and ·sisters, share and share alike, their heirs and assigns. * * *

"I authorize and empower my executors and trustees for the purpose of paying debts and legacies and also for the general purposes of this will * * * ·to sell at public or private sale all and any part of my real estate which I ·may own, or over which I may have any power of disposition" &c.

It is admitted that the estate left by Mrs. Maxwell, exclusive ·of the land in New Jersey which was embraced in the trust deed, was insufficient to pay her debts, and it cannot be controverted that her will operates to dispose of those lands either as ·an appointment under the power created by the trust deed, or else as a devise of the property which came to her by virtue of her husband's will.

In this condition of affairs, the Guarantee Trust and Safe Deposit Company filed its bill in the court of chancery, as executor ·and trustee under Mrs. Maxwell's will, asking the direction of ·that court as to the payment of the legacy of $5,000, given to ·the Presbyterian Hospital, out of the proceeds of the sale of the ·property embraced in the trust deed.

It was insisted, in the court below, on the part of the other ·beneficiaries under the will of Mrs. Maxwell, that the legacy to ·the hospital, having been given by a will which was made only ·five days before the death of the testatrix, was void by virtue of ·the provision of the eleventh section of the act of the legislature ·of the State of Pennsylvania, relating to estates held for corporate, religious and charitable uses, which reads as follows:

"No estate, real or personal, shall hereafter be bequeathed or devised to any body politic, or to any person in trust for religious or charitable uses, except ·the same be done by will, attested by two credible, and at the time disinterested, witnesses, at least one calendar month before the decease of the testator; and all dispositions of property contrary hereto, shall be void and go to the ·residuary legatee or devisee, next of kin, or heirs, according to law."

The learned vice-chancellor who heard the case considered that this insistment was without force, and that the hospital was entitled to be paid its legacy out of the proceeds of the sale of

the New Jersey land, notwithstanding the prohibition of the Pennsylvania statute just cited; and he puts his decision upon the ground that there was no conversion of the land directed by the will, and that the laws of Pennsylvania, restricting testamentary power, can have no application or force in New Jersey so far as real estate located here is concerned.

It seems to me that this decision rests upon an erroneous basis, and that the question whether or not there was an equitable conversion of this land by the will of the testatrix is one which is of no materiality in the determination of this cause. There has been no devise of this land to the hospital; the testatrix has merely bequeathed to it a *pecuniary legacy* of $5,000, and has directed its payment out of her residuary estate. It is true that she has authorized the Guarantee Trust and Safe Deposit Company, as her executor and trustee, to sell this land for the purpose of paying debts and legacies generally in case it should be advisable to do so, but this does not in any way alter the character of the gift to the hospital, which still remains a money legacy, and not a devise of land situate in New Jersey. The law of the *situs* of this land merely regulates its sale, when that shall take place as provided in the will, and the passage thereof to the purchaser. That is all. It has nothing to do with the distribution of the proceeds of such sale among the creditors and legatees of the decedent. That distribution is regulated by the law of the testatrix's domicil, which, at the time of the making of her will and of her death, was Pennsylvania. *Bruce* v. *Bruce, 6 Brown P. C. 550; Doglioni* v. *Crisbin, L. R. 1 H. L. Cas. 301; Ennis* v. *Smith, 14 How. (U. S.) 400; Shultz* v. *Pulver, 3 Paige 182; Banta* v. *Moore, 2 McCart. 97; Harral* v. *Harral, 12 Stew. Eq. 279.*

The gift to the Presbyterian Hospital, contained in Mrs. Maxwell's will, being a pecuniary legacy given by a person who was a resident of and domiciled in the State of Pennsylvania, to a corporation of that state, is invalid by force of the eleventh section of the statute of that state relating to estates held for corporate, religious and charitable uses, hereinbefore referred to, having

been made by a will which was executed less than thirty days before the death of the testatrix.

The legacy being void, it must consequently fall into the residuary estate of the testatrix and be distributed therewith.

The decree below should be reversed and the record remitted, in order that a decree may be made in accordance with these views.

*For reversal*—The Chief-Justice, Dixon, Gummere, Lippincott, Van Syckel, Bogert, Brown, Krueger—8.

*For affirmance*—Magie, Reed, Sims—3.