WALTER W. WHITE and KATHERINE WHITE, his wife, complainants-appellants,

*v.*

HARRY BRINKERHOFF, MADGE SNOW, DOROTHY F. CAMERON, EDNA M. CAMPBELL and EDWIN M. BLANCHARD, defendants-respondents.

[Submitted October term, 1931.   Decided February 1st, 1932.]

*Messrs. Wall, Haight, Carey & Hartpence* (*Mr. William H. Carey,* of counsel), for the complainants-appellants.

*Mr. Clarence Mabie,* for the defendants-respondents.

The opinion of the court was delivered by

CASE, J.

This is an appeal from a decree of the court of chancery adverse to the complainants on their bill to quiet title to a

portion of the lands of which Henry E. Brinkerhoff, on March 19th, 1904, died seized. A mortgage given by Mr. Brinkerhoff during his lifetime was, after his death, foreclosed under a bill in chancery, filed February 11th, 1905, which did not bring in certain of Brinkerhoff's heirs-at-law as parties. Complainants claim through *mesne* conveyances from the purchaser at the foreclosure sale. The principal controversy is whether Mr. Brinkerhoff's will converted the realty into personalty with the result that there was no intestacy and no descent to the heirs-at-law.

The pertinent parts of Mr. Brinkerhoff's will are as follows:

"Second—I give and bequeath unto my wife Sarah the use and income of all my personal estate and the rents, issues and profits of my real estate so long as she shall live.

"Third—After the death of my said wife I hereby direct that the plot containing my homestead buildings about two hundred feet front on Pollifly Road by three hundred feet deep shall be set apart, of which plot I give and bequeath the use and income to my son Harry Brinkerhoff for his life and after his death I give and devise the same to his children equally share and share alike to them, their heirs and assigns forever.

"Fourth—I hereby authorize empower and direct my executors or the survivors of them to sell and dispose of my real estate at such time or times as he or they may think is for the best interest of the same either at public or private sale, and give good and sufficient deeds therefor, but in case it shall not be necessary to sell all my real estate to pay my debts, I direct my executors to hold that portion which contains my homestead buildings as described in the third item of this my will so that my wife during her life and my son Harry after her death may have a home, and out of the proceeds of the balance of my real estate after payment of all my debts and testamentary expenses I give and bequeath unto my daughter Mary Elizabeth one-third thereof to her, her heirs and assigns forever and the remaining two-thirds I order my executors to invest and keep invested and the income derived therefrom I give and bequeath unto my daughter Ella W. Blanchard and son Harry Brinkerhoff for and during their natural lives equally and at the death of my daughter Ella W., I give and bequeath unto her children one-half of said sum so invested that may remain to them their heirs and assigns forever, and at the death of my son Harry Brinkerhoff I give and bequeath unto his children the remaining one-half of said sum so invested to them, their heirs and assigns forever.

"Fifth—In case the income, rents, issues and profits of my estate shall not be sufficient for the proper care, maintenance and support of my said wife in the discretion of my executors then I order my executors to use of the principal of my estate such amount as shall from time be necessary for that purpose.

"Lastly—I hereby nominate, constitute and appoint my wife Sarah Brinkerhoff, Executrix and my friend James M. Van Valen, Executor of this my last will and testament and do hereby revoke and make null and void all former and other wills by me at any time heretofore made."

The homestead buildings and plot referred to in the third and fourth paragraphs are not a part of the lands in question. Of the executors named in the will, the widow, Sarah Brinkerhoff, alone qualified. The power of sale granted in the fourth paragraph has never been exercised.

Surviving Mr. Brinkerhoff were his widow, who died September 18th, 1916, and three children, Harry Brinkerhoff, Mary Elizabeth Blanchard, who died, intestate, without husband or children, December 25th, 1913, and Ella Blanchard, who died April 11th, 1904; also five minor grandchildren, namely Madge (now Mrs. Snow) and Dorothy F. (now Mrs. Cameron), children of Harry Brinkerhoff, and Edna M. Blanchard (now Mrs. Campbell), Marion E. Blanchard (died without issue September 19th, 1917), and Edwin M. Blanchard, children of Ella Blanchard. Of these persons only the widow and the son, Harry Brinkerhoff, were made parties to the foreclosure.

The bill in the instant case brings in Harry Brinkerhoff and the surviving grandchildren and prays that these persons be decreed to have no estate or interest in the lands. The vice-chancellor determined that the complainants own an undivided one-third part of the fee, namely, the share of Harry Brinkerhoff acquired at the foreclosure; that the defendant Harry Brinkerhoff owns an undivided one-sixth, which he inherited from his sister, Mary Elizabeth, and that each of the grandchildren, Edna M. Campbell and Edwin M. Blanchard, owns an undivided one-fourth interest inherited in part from their mother, in part from their aunt and in part from their sister Marion. The decree also granted to the complainants a lien or charge upon the outstanding undivided two-thirds part of the premises in an amount equal to two-thirds of the sums expended by the complainants or their predecessors in title in the improvement of the premises. The foregoing result was predicated

upon the determination that the will did not dispose of the legal title except to the extent of a life estate to the widow and that by operation of law the fee descended, at Mr. Brinkerhoff's death, to his heirs, namely, his three children.

The appellants contend in the first and second points of their brief that the will of Henry E. Brinkerhoff worked an equitable conversion of his real estate into personalty as of the date of his death and that the legal title to the premises then became vested in his executrix. This proposition involves a mistaken conception of the doctrine of conversion and is contrary to our established law. Equitable conversion is a fiction to protect beneficiaries and to sustain and carry out the intention of the testator or settlor and rests in the personal intention of the owner of the property. *Roy* v. *Monroe, 47 N. J. Eq. 356, 359; 13 C. J. 852.* It operates no further than to accomplish its purpose (*McGlynn* v. *McGlynn, 101 N. J. Eq. 66*) ; for instance, when land is, for certain purposes, required to be converted into money and in the sale more is sold than is required for that purpose, the excess of the proceeds will be considered as land. *Cook's Executor* v. *Cook's Administrator, 20 N. J. Eq. 375, 377; Oberly* v. *Lerch, 18 N. J. Eq. 346.* The will confers upon the executrix no control over or duties with respect to the land in the interim between the testator's death and the sale under the power. The rents, issues and profits from the real estate go to the widow as such. We think that the authority to the executors is a naked power of sale. The fact that the lands would need, in time, to be sold in order to give effect to Brinkerhoff's beneficenses was not of itself sufficient to cause equity at once, and for all purposes, to translate the land into personalty. No right of the mortgagee arose out of the testamentary provisions or from those who were to benefit therefrom. The fourth paragraph of the will directs the executors, or the survivor of them, to sell at such time as they or he might think best and makes charges upon and bequests from the proceeds. The lands descended to the heirs-at-law subject to the life right in the widow under paragraph two and charged with the trust created by the will.

Appellants cite *Crane* v. *Bolles, 49 N. J. Eq. 373,* opinion by Chancellor McGill, in support of their contention. In that case the will imperatively required the executors to sell the real estate in fee after a short time and during that time to control the property by leasing it, collecting the rents, and paying the taxes, insurance premiums, repairs and expenses incidental to its management, and it was held that the fee went to the executors in trust for those purposes and that as to the testator's children the entire estate must be considered as personalty. The issue there arose on a dispute between claimants *under the will* as to how the will should be construed in order to give effect to the testator's expressed intent in the distribution. The same chancellor, sitting as ordinary, in *Todd* v. *Wortman, 45 N. J. Eq. 723,* wherein the will ordered and directed the executors to make sale, held that inasmuch as nothing in the will indicated that the testator intended his executors to take any estate in his lands, and the provisions and scheme of the will were not of such a character as to render it necessary that the executors should take such an estate, the executors took merely a naked power of sale to be executed, not immediately, but as soon as the executors' convenience and the welfare of the estate would permit, and that until the sale was made the legal title descended to the heirs.

The general rule has long been recognized in this state that where land is directed to be converted into money by the executors and the proceeds distributed in a manner designated by the testator, such proceeds are to be regarded as gifts of money to the distributees and not as devises of real estate, but that, in the circumstances stated, until the power of sale is exercised the legal estate descends to and vests in the heirs-at-law of the testator as tenants in common, such heirs taking the legal title charged with the trust created by the will. *Triplett* v. *Ivins, 93 N. J. Eq. 202.* Brinkerhoff's heirs-at-law were his three children, Harry, Mary Elizabeth and Ella. We find that Brinkerhoff made no disposition of the fee pending sale under the power. At his death the legal estate descended to his heirs, subject to the encumbrance and

subject to divestiture on the exercise by the executrix of the testamentary power of sale. Harry was a party defendant to the foreclosure proceedings. His equity of redemption was foreclosed. His one-third interest was sold by the sheriff and is now the property of the complainants. The remaining heirs-at-law were not brought into the foreclosure and, as there has been no exercise of the power, their interests are outstanding.

The next point is that when there has been an equitable conversion by will of lands of which the testator died seized, his heirs-at-law are not necessary parties in a suit brought to foreclose a mortgage made by the testator. This, again, is an enlargement of the true theory of conversion. There was no conversion of the estate that lay in the heirs-at-law pending the exercise by executrix of her power of sale.

It is next contended that if the legal title did not vest in the executrix then it vested in the eldest son of the testator. Why the eldest son of the testator is not made apparent; but we have already adversely decided the major premise of the point, which is that an equitable conversion occurred at the death of the testator, wherefore, so it is argued, some-one—the eldest son if not the executrix—must be holding the legal title in trust. The trust was in the executrix, not in the heirs-at-law or any one of them. The heirs-at-law simply took the title charged therewith.

The fifth point is that the sale by the sheriff in the fore-closure suit operated in legal effect as a sale by the executrix in the exercise of the direction of the testator. This is grounded on the untenable argument that the mortgagee was entitled to compel the executrix to comply with her trust obligations. There was no such right in the mortgagee at the time of the foreclosure decree. That decree was to make the lands answerable to the mortgage claim. At the sale there was a deficiency, but that was never pursued, and the possible remedies for a deficiency may not be read back into the foreclosure decree from which the complainants' title emanates.

It is next argued that the rights of the defendants, Harry

Brinkerhoff, Edna M. Campbell and Edwin M. Blanchard, if any, are subject to the payment of a proper portion of the deficiency resulting from the foreclosure sale of the premises in question with other property. Whatever force this proposition may have as a statement of law, it has no application to the issues. The complainants claim under a chain of title that goes back to the sheriff's sale under foreclosure decree; but the decree is not theirs and they are not concerned with the fact that the proceeds of sale were not sufficient to satisfy the decree.

The final point relates to costs and counsel fee and, in view of our determination otherwise, calls for no discussion.

The heirs-at-law of Henry E. Brinkerhoff were necessary parties to the foreclosure. With the exception of the original one-third interest of Harry Brinkerhoff their rights have not been foreclosed. The lien granted the complainants for the improvement costs is not under dispute.

The decree below will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, HETFIELD, DEAR, KERNEY, JJ. 11.

*For reversal*—CAMPBELL, LLOYD, KAYS, WELLS, JJ. 4.