49 N.J. Super. 485 (1958)
140 A.2d 249
IN THE MATTER OF THE PROBATE OF THE ALLEGED WILL OF ELIZABETH McDOUGAL (McDOUGALL), ALSO KNOWN AS BESSIE McDOUGAL (McDOUGALL), DECEASED. IN THE MATTER OF THE ESTATE OF ELIZABETH OF McDOUGALL A/K/A BESSIE McDOUGALL.
Superior Court of New Jersey, Morris County Court, Probate Division.
Decided April 3, 1958.
*486 Mr. Joseph J. Maraziti argued the cause for Ezra McDougall (Mr. Aaron Dines on the brief).
Mr. Paul Colvin argued the cause for Loretta Lenox, Robert McDougall, Thomas McDougall, Catherine Burd, Aloyius McDougall, Gerard McDougall, and Theresa Nixon.
*487 Mr. William J. Tiernan argued the cause for Walter F. McDougall and Vincent McDougall (Tiernan & Strulowitz, attorneys).
Mr. Edward F. Broderick argued the cause for Sacred Heart Church.
MINTZ, J.C.C.
Elizabeth McDougal (McDougall), also known as Bessie McDougall, died on May 23, 1957, a resident of Los Angeles, California. She had resided in the State of California continuously for about 19 years up to the time of her death. Prior thereto the decedent was a resident of Dover, New Jersey, the place of her birth. She had never married. Her surviving next of kin and heirs at law are a brother Ezra, and several nephews and nieces, children of her brothers Walter and Robert, who predeceased her.
During her domicile in New Jersey Elizabeth executed a will dated April 27, 1935. The will was prepared for her by a New Jersey attorney and purports to make disposition of all her real and personal property. There was also found among her effects a holographic will dated April 4, 1956, executed by Elizabeth in California. The holographic will in its entirety is as follows:
"April 4 - 1956
"I Elizabeth McDougall of the City of Los Angeles and State of California.
"Declare this to be my last will & testament.
"1st I order & direct my Executors to pay all my just debts and funeral expences as soon as convenient after my decase
"2nd I am leaving my Brother Ezra McDougall One dollar for the reason he received his share from my fathers estate that was turned over to me. by my Brothers Robert & Walter now decease
"3rd I am leaving property at 11-E Munson Ave to be sold & divided equal to my Brothes children Robert & Walters.
 "Elizabeth McDougall L.S."
At the time of her death, decedent was the owner of the real property situate at 11 East Munson Avenue, Dover, New Jersey, the subject matter of the holographic will.
*488 Her brother Ezra, a resident of Dover, was apprised of the April 4, 1956 document. He was unaware of the existence of the original April 27, 1935 will, having knowledge only of a copy of said will. He filed a complaint in this court, challenging the validity of the 1956 instrument under the New Jersey law, there being no subscribing witnesses or any attestation. His complaint alleges that in addition to the Dover realty decedent left personal property in the State of New Jersey in the approximate amount of $2,500, and personal property in the State of California in the approximate amount of $670. He further alleges that said document may be valid in the State of California, but invalid to pass real estate situate in New Jersey. He demands judgment admitting said will to probate, that he be appointed administrator cum testamento annexo, and that this court render a declaratory judgment setting forth the effect of this document upon the personal and real property of the decedent. No proceedings have been taken for the probate of the holographic will in California, and it has not been admitted to probate in that state.
Subsequent to the filing of Ezra's complaint, the original will of Elizabeth dated April 27, 1935 was discovered. In this will the testatrix appointed her brothers Walter and Robert (who predeceased her) as executors. Walter, a nephew of the testatrix and son of her deceased brother Walter, thereupon filed a complaint alleging that no proceedings for the probate of the said will are pending in the State of California, nor has said will been admitted to probate in that state. He demands judgment that said will be admitted to probate and that letters of administration cum testamento annexo be granted to him. The formal New Jersey will purports to devise a life estate in the specific real property at Dover to her brother Walter, and the remainder to her nephews Walter and Vincent, the sons of her brother Walter (to the exclusion of her late brother, Robert's children).
The two proceedings were consolidated for hearing. At the oral argument, counsel agreed that the only real property *489 left by the nonresident decedent in the State of New Jersey was the property at 11 East Munson Avenue, Dover.
Robert's children object to the probate of the 1935 will and contend that only the holographic instrument should be admitted to probate. The issue is whether the Dover property is devised pursuant to the formally executed New Jersey will in 1935, or does the property, or the proceeds from the sale thereof, pass in accordance with the 1956 California holographic will.
Robert's children concede the insufficiency of this document to effectively devise realty in New Jersey, but contend in brief that this instrument contains a direction to sell the property and divide the proceeds. As a result of this direction, they assert that the principle of equitable conversion applies, that is, the real property is deemed personalty and the instrument, being valid to pass personalty in the State of California, where decedent was domiciled, is likewise valid to pass personalty (the proceeds from the sale of the Dover property) in New Jersey.
The constitutional and statutory right of the County Court to render a declaratory judgment in the case sub judice, adjudicating the interests, if any, that may vest under a will, is not challenged and finds support in our decisional law. Donnelly v. Ritzendollar, 14 N.J. 96 (1953); In re Koehler's Estate, 43 N.J. Super. 585 (App. Div. 1957).
The 1956 holographic will was made by decedent while domiciled in California. Counsel agree that such a will is entirely valid under the law of that state. They also agree that the 1935 will, validly executed in New Jersey, was also executed in accordance with California law. Obviously the holographic will is ineffective to devise realty in New Jersey since it does not comply with N.J.S. 3A:3-2 which provides that:
"Except as provided in section 3A:3-5 of this title, a will to be valid shall be in writing and signed by the testator, which signature shall be made by the testator, or the making thereof acknowledged by him, and such writing declared to be his last will, in the presence of 2 witnesses present at the same time, who shall subscribe their names thereto, as witnesses, in the presence of the testator."
*490 The holographic instrument is likewise ineffective to revoke a prior valid devise, since the purported revocation was not executed in the same manner in which wills are required by law to be executed. N.J.S. 3A:3-3.
The fact that the holographic will may be legally sufficient in the State of California, the domicile of testatrix, does not render it legally sufficient to devise real property in New Jersey. Our courts have adhered to the majority rule which holds that as to a devise of land, the law of the situs of the land, and not the law of the domicile of the decedent, prevails. In Nelson v. Potter, 50 N.J.L. 324 (Sup. Ct. 1888), the decedent Potter died in 1885, domiciled in California. His will purported to devise certain properties in New Jersey. It was executed in compliance with California law but not with New Jersey law. The court declared the California will to be invalid to pass real estate situate in New Jersey, and stated that:
"* * * The incidents of real estate, its disposition and the right of succession, depend upon the lex rei sitae. The validity of bequests of personal property depends upon the law of the testator's domicile, and the validity of devises of real property upon the law of the state where the lands lie. Hence a will executed according to the law of the testator's domicile will pass personal property wherever situate, but with respect to devises of lands the will must be executed according to the formalities prescribed by the law of the state in which the land is situated. 4 Kent 513; Story on Conflict of Laws, § 474; Wharton on Conflict of Laws, § 585; Jones v. Habersham, 107 U.S. 174, 179, [2 S.Ct. 336, 27 L.Ed. 401]; Robertson v. Pickrell, 109 U.S. 608, 3 S.Ct. 407, 27 L.Ed. 1049; Pratt v. Douglas, 11 Stew. 516; 1 Jarman on Wills (Randolph's ed.) 1, and note b."
See also Fidelity-Philadelphia Trust Co. v. Harloff, 133 N.J. Eq. 44, 60 (Ch. 1943); Pratt v. Douglas, 38 N.J. Eq. 516, 533 (E. & A. 1884).
It necessarily follows that the subsequent California will cannot revoke a prior valid New Jersey will dealing with real property. In re Winter's Estate, 24 N.J. Misc. 167 (Orph. Ct. 1946); Boylan v. Meeker, 28 N.J.L. 274 (Sup. Ct. 1860).
*491 A parallel situation to the case at bar was presented in the Winter case. There, the deceased while a resident of New Jersey executed a valid will devising realty in this State. He subsequently removed to Arizona, and while domiciled there executed a holographic will, in which he revoked all prior wills and attempted to dispose of all his real and personal property. The court held that:
"It is true that a later inconsistent will revokes a former will, but the later will must be executed according to our statutes on revocation, therefore, the attempted revocation in the Arizona will, either implied or expressed, can not affect New Jersey real estate. * * *

* * * * * * * *
Since the New Jersey will is the only legal will affecting real estate in this state, and is unrevoked as such, it follows that it is the last will of real estate which this state will recognize and thus is within the terms of the statute."
Robert's children urge that the holographic will does not purport to devise realty, but rather, in substance, is a bequest of the proceeds to be realized from the sale directed by the testatrix in the holographic will, hence the holographic will should be given effect. The New Jersey law determines whether or not the holographic will has effected an equitable conversion of the realty. The rule is stated, in Goodrich, Conflicts of Laws, sec. 167, p. 509:
"Whether real property is, by the terms of the will to be treated as equitably converted into personalty, depends upon the law of the state where the land lies, not upon that of the domicile of the owner."
The doctrine of equitable conversion was lucidly expounded and upheld in Kuiken v. Simonds, 3 N.J. 480, 485, 486 (1950). In Kuiken, the will contained a directive to the executor to sell land and divide the proceeds. A judgment creditor of one of the devisees caused an execution to issue and levy to be made on his interest in said land. The levy proceeded to sheriff's sale at which plaintiff bought, and pursuant to which she received a deed. The trial court *492 held there was an equitable conversion of the real estate, and denied plaintiff's bill seeking a partition of the land. The court there said:
"The doctrine of equitable conversion is a development of the principle that equity regards as done that which ought to be done. It is not applicable to estates at law or to courts of law. Teneick v. Flagg, 29 N.J.L. 25, 31 (Sup. Ct. 1860). It is applied upon the theory of carrying out the instruction of the testator. The effects ordinarily extend only to those persons who claim or are entitled to the property under or through the instrument, or directly from or under the author of the instrument. 4 Pomeroy's Equity Jurisprudence (5th ed), sec. 1166. Equitable conversion is a fiction to protect beneficiaries and to sustain and carry out the intention of the testator or settlor and rests in the personal intention of the owner of the property. White v. Brinkerhoff, 109 N.J. Eq. 553 (E. & A. 1931).
The doctrine has been defined as `that change in the nature of property by which, for certain purposes, real estate is considered as personal, and personal estate as real, and transmissible and descendable as such'. Pomeroy, sec. 1159. The general rule has long been recognized in this state that where land is directed to be converted into money by the executors and the proceeds distributed in a manner designated by the testator, such proceeds are to be regarded as gifts of money and not as devises of real estate. Triplett v. Ivins, 93 N.J. Eq. 202, 204 (E. & A. 1921).
The time from which the conversion takes effect, like all other matters of intention, depends upon the provisions of the particular instrument. But where there is an absolute direction to sell, conversion becomes effective from the death of the testator unless his intention appears to have been otherwise. Pomeroy, sec. 1162; White v. Brinkerhoff, supra."
See also 7 N.J. Practice (Clapp, Wills and Administration), p. 435.
In Kuiken, the doctrine of equitable conversion was invoked in precluding a suit for partition. It was not applied to convert an invalid will into a valid will.
The ingenious argument offered by the proponents of the holographic will was advanced in Jenkins v. Guarantee Trust & Safe Deposit Co., 53 N.J. Eq. 194 (Ch. 1895), reversed on other grounds 53 N.J. Eq. 200 (E. & A. 1895). In that case a Pennsylvania testatrix bequeathed within one month of her death to a Pennsylvania charitable organization *493 an amount of money and authorized her executor to sell her real estate in New Jersey for the purpose of paying the legacy. Under the Pennsylvania statute a devise or bequest for charitable uses was invalid unless made at least one month before the death of the testatrix. The parties seeking to void the gift to the Pennsylvania charity urged that since the will directed a sale of New Jersey lands, the immediate effect was to convert the land into money and therefore bring the gift within the law of the domicile of testatrix. Vice-Chancellor Pitney held that the legacy was valid, since the Pennsylvania law could not operate on land in New Jersey, he being of the opinion that the will did not work an equitable conversion. The Court of Errors and Appeals reversed and held that the question as to whether or not there was equitable conversion was immaterial, that the gift was not a devise of land but a pecuniary legacy; and that therefore the Pennsylvania statute was applicable. The legacy having been made by a will executed less than one month before the death of testatrix, was invalid thereunder.
In the course of his opinion, Vice-Chancellor Pitney, in rejecting the applicability of equitable conversion, stated that:
"The weakness of this argument lies in the assumption upon which it necessarily rests, that the conversion took place in the lifetime of Mrs. Maxwell. Her will took effect from her death, and there could be no conversion until it did take effect. The mere fact that she in her lifetime formed the intention to cause this land to be turned into money, and expressed that intention in writing in such a manner that it would be carried into effect after her death, did not work the conversion. That could only take effect at or after her death, which was a prerequisite. At the moment when she made the testamentary disposition in question, and every moment thereafter up to and including the moment of her death, this land remained land, both in fact and in equitable fancy, and, as such, subject to the laws of New Jersey. Mrs. Maxwell necessarily dealt with it as land, and, in converting it into money by her will, she was not only entitled to act in accordance with the laws of this state, but she was obliged to do so. She could not make the conversion without exercising dominion over the land, and that dominion she must and could exercise according to the laws of New Jersey." 53 N.J. Eq. 197-198.
*494 The view of the learned vice-chancellor on equitable conversion, in light of the subsequent reversal, is dictum  but the dictum is sound law and appears particularly fitted to the case sub judice. The fiction of equitable conversion is urged as a device to effectuate the intention of the testatrix. Its application must be denied where the consequence is circumvention of a basic principle of law. Simply stated, Elizabeth McDougal could not make the conversion without exercising dominion over the land. She was obliged to exercise that dominion in accordance with New Jersey law. The holographic instrument does not comply with such law, and does not make a legally effective disposition of the Dover real property. It therefore cannot be admitted to probate for such purpose.
The former statute permitted the original probate in this State of a non-resident's will affecting personalty here, if the will was executed in due form to pass title to real estate situate in this State. R.S. 3:2-45.1. In 5 N.J. Practice (Clapp, Wills and Administration), sec. 97, p. 218, the learned author in referring to this law states:
"The personal property statute seems to pull out of shape the law of conflicts relating to the matter. Under well-settled doctrines, the validity of a will so far as it deals with personalty is determined by the law of the testator's domicile. * * *"
This situation appears to have been corrected by N.J.S. 3A:3-29. The author in the 1956 pocket part, supplement to volume 5, at p. 95, sec. 97, n. 32-33, referring to the later statute states that:
"By the revision, N.J.S.A. 3:2-45.1 was changed so as not to require the will to be executed in accordance with the law of New Jersey. It would seem that under the revision both the County Court and the Superior Court are, so far as personalty is concerned, required to admit the will to probate, if it is validly executed according to the law of the testator's domicile and so far as New Jersey realty is concerned, if it is validly executed according to New Jersey law."
Proof was presented indicating execution of the holographic will in accordance with California law and execution *495 of the 1935 will in accordance with New Jersey law. It follows that the holographic will may be admitted to probate, limited in application to the personalty of the testatrix situate in New Jersey at the time of her death. It may be, that the net effect of the holographic will is to bequeath the sum of $1 to her brother Ezra, and that the specific and residuary bequests in the 1935 will remain unrevoked, or perhaps there may be an implied revocation of such bequests with resultant intestacy as to the personalty. That determination will be governed by the law of California and that issue is not presently before this court.
Judgment will be entered denying probate of the holographic will insofar as it purports to dispose of the Dover real property, or any proceeds realized from the sale of such property. It will be admitted to probate for whatever effect it may have under California law, on the disposition of the personalty of testatrix situate in New Jersey.
The 1935 New Jersey will is admitted to probate. This will effectively devises the Dover real property. By stipulation of counsel for the respective litigants, Loretta Lenox is to be appointed administratrix with the wills annexed.