FIDELITY UNION TRUST COMPANY, as executor of and trustee under the last will and testament of J. Ackerman Coles, deceased, complainant-appellee,

*v.*

WARREN ACKERMAN et al., defendants; BEULAH B. CRANE, as executrix of the last will and testament of William M. Crane, deceased, RICHARD CRANE, et al., defendants-appellants.

[Submitted February term, 1938. Decided May 11th, 1938.]

*Messrs. Stetson & Gormley, Mr. Alva Collins* and *Mr. Henry T. Stetson,* for Warren Ackerman et al.

*Mr. Aquila N. Venino,* for Beulah B. Crane et al.

*Mr. James M. Fennessy,* for Marion S. Ackerman et al.

*Mr. Frederick C. Waldron, Messrs. Diekema, Cross & Ten Cate* and *Mr. Arthur V. Talmage,* for Hope College.

*Messrs. Lehlbach, Johnson & Ormond,* for Children's Aid Society.

*Mr. Charles H. Stewart,* for Thessalonica Agricultural and Industrial Institute.

*Messrs. Sorg, Duncan & Bailey (Mr. Herman D. Sorg),* for American Baptist Foreign Mission Society et al.

*Messrs. Hood, Lafferty & Campbell* and *Mr. Richard C. Plumer,* for the complainant-appellee.

The opinion of the court was delivered by

Bodine, J.

The bill was filed for the construction of the will of the late J. Ackerman Coles, who died a resident of Union county December 16th, 1925. The will dated June 5th, 1925, was probated December 28th, 1925. The Fidelity Union Trust Company qualified and is still acting as executor of the will and trustee under the several trusts created therein. The bill sought a construction of the sixth, seventh and eighth paragraphs thereof. So far as pertinent the provisions are as follows (the italics being ours) :

"*Sixth:* I give and devise all my real estate situate in the City of New York and State of New York to my executors, in trust, nevertheless to hold the said real estate or its proceeds during the lifetime of my first cousins, Lydia A. Murphy and Marion S. Ackerman, Sr.; (a provision to sell under a now expired option), then generally to sell the said real property at such time, for such price and upon such terms as my said trustees shall determine; to invest the proceeds from the sale of the said real property, making reinvestments as occasion may require; to collect and receive the rents, issues, profits and income thereof and to *distribute the net total income of the said trust estate* among the same beneficiaries, in the same shares, manner and estates as the net income of the *residuum* of my estate, after the payment of annuities, is, by the terms of this will, to be distributed, and upon the death of the survivor of the said Lydia A. Murphy and Marion S. Ackerman, Sr., to divide the *corpus* of my said trust estate among the same beneficiaries and in the same shares, manner and estates as, by the terms of this will, the *corpus* of the *residuum* of my estate is to be divided.

"*Seventh:* All the rest, residue and remainder of my estate, both real and personal, I give, devise and bequeath to my executor, in trust, nevertheless, to hold the same during the following twelve lives

* * * to manage the same with power to grant such leaseholds as it may deem wise; to invest and reinvest the same as occasion may require; and in its discretion, but at private sale only, to convert into personalty any real estate of which I may die seized; to collect and receive the rents, issues, profits and income thereof; and out of the net total income of said trust estate to pay the following net annuities to each of the persons hereinafter designated as long as such persons shall live, said annuities to be paid in quarterly payments * * * and to divide the balance of said net annual income into four equal parts, *reserving and accumulating* one of said equal parts and adding the same with its accumulations thereon to the *corpus* of my estate until the distribution of the said *corpus* as in this will provided for; and dividing and *distributing the remaining three parts of said net income* quarterly as hereinafter named to the *designated natural persons* or such of them as may survive, and among the charities hereinafter named, or such of them as shall then be existent, in such manner that each beneficiary may receive and have the following designated number of equal shares thereof * * *. Upon the death of the last of said 'twelve lives' my said trustees shall convert my said trust estate into money, provided, always, that the real estate is not to be disposed of at auction or public sale, and shall divide the *corpus* of the same, including therein the aforesaid reserved portion of the income with its accumulations and all legacies and devises which may lapse or otherwise fail which are hereby made part of said *residuum* of my estate, into as many equal shares as shall be required to make the following distribution among the charities hereinafter named or such of them as shall then be existent * * *.

"*Eighth:* Whereas, I am one of the beneficiaries under the last will of Warren Ackerman, deceased, late of Scotch Plains, in the County of Union, New Jersey, under whose will I am authorized to direct, by my duly executed will and testament, the payment of the principal of the share which has been set apart for me; now, therefore, pursuant to said authority, I do hereby direct said principal to be paid to my executor, and I direct said executor to hold the same in trust for the like period during which the *residuum* of my own estate is directed to be held by it, and during said period to manage and invest the same in the like manner in which my trustee is directed to manage and invest the *residuum* of own my estate; and to divide and pay over the net income among the same beneficiaries and in the same shares, manner and estates as I have directed by this will that the net income of the *residuum* of my own estate, after the payment of the annuities charged against the same, shall be distributed and divided: and also to divide and pay over the *corpus* of the said trust estate among the same beneficiaries and in the same shares, manner and estates as I have directed by this will that the *corpus* of the *residuum* of my own estate shall be distributed and divided."

The final decree provided in part as follows: "(1) Under the provisions of paragraph 'sixth' of the last will and testa-

ment of said J. Ackerman Coles, deceased, it is the duty of the complainant Fidelity Union Trust Company, as executor and trustee, aforesaid, to set aside one-fourth of the net annual income from the principal of the trust fund established by said paragraph and reserve and hold the same, with the accumulations thereon and income from the investment thereof, during the lifetimes of the testator's first cousins Lydia A. Murphy and Marion S. Ackerman, Sr., and upon the death of the survivor to divide and distribute said one-fourth of the net annual income, with the accumulations thereon and income from the investment thereof, as a part of the principal of said trust fund, among such of the charities named in paragraph 'Seventh' of said will as shall then be existent, said division and distribution to be made in the same shares, manner and estate as, by the terms of said paragraph 'Seventh,' the *corpus* of the *residuum* is to be divided and distributed. (2) For lack of jurisdiction, that part of the decree entered at a Special Term, Part III, of the Supreme Court of the State of New York, held in and for the County of New York on April 12th, 1933, in an action commenced by the Fidelity Union Trust Company, as executor of and trustee under the last will and testament of J. Ackerman Coles, deceased, and as ancillary executor within the State of New York of the last will and testament of said J. Ackerman Coles, deceased, plaintiff, against Marion S. Ackerman, Sr., individually and as executor of the will of Ernest R. Ackerman, deceased, et al., defendants, wherein it was adjudged that: '2. Said testator, by said paragraph Sixth of his last will and testament, makes no provision for an accumulation of the rents, issues, profits and income of the trust of said New York real estate created thereby or any part thereof, but by said paragraph of his will said testator directs the plaintiff-trustee to divide and distribute the entire net total income of said trust to and among the same beneficiaries and in the same shares, manner and estate as the said testator by paragraph Seventh of his will directs the plaintiff-trustee to divide and distribute the three-fourths of the net income of the trust of the residuary estate remaining

after the payment of annuities,' is void and ineffective, and shall be given no faith or credit in the courts of this state." These provisions were erroneous. The balance of the decree, however, after carefully considering the opinion of the court and arguments of counsel are deemed proper.

The principal question presented for determination by the appeal from that portion of the decree deemed erroneous is whether the sixth paragraph of the will provides for an accumulation of one-quarter of the income of the trust property situate in the city of New York. The direction of the will is that the real estate, or its proceeds, shall be held in trust during the lifetime of Lydia A. Murphy and Marion S. Ackerman and the *net total income* so derived is to be distributed among the same beneficiaries in the same shares, manner and estates as the net income of the *residuum* of the estate. The testator speaks of both *net total income* and *net income*. The reason is perfectly clear. In the sixth paragraph of his will he was dealing with a trust in New York real estate. He had undoubtedly been advised that an accumulation of income from real estate situate in New York would be void unless for the benefit of one or more minors. The accumulations directed in other parts of the will were not for minors but charities. Real property law of New York, sections 42 and 61, forbids such accumulation and such a trust is void. It was the decision of the court of chancery that the power of sale granted with respect to the New York real estate operated as an equitable conversion of that property, and that the disposition of the total net income was subject to the laws of this state and that the directions for accumulation of one-fourth as set forth in the seventh paragraph of the will governed, notwithstanding that the matter had been adjudicated to the contrary in a proceeding between the same parties in the courts of New York. The specific findings of the New York court appear in so much of the final decree appealed from as was heretofore set forth.

The construction of the sixth paragraph of the will relating to a trust in New York real estate is subject to the New York law. The construction which the courts of that state have

placed upon the will is the only construction possible if the will is to have validity in that state. The rights so established in that state may not be disturbed by the courts of this state. A right established under a will, in accordance with the law of the state where the land devised is situate, may not be disturbed by the courts of testator's domicile.

The rule stated in the American Law Institute, *Re-statement of Conflict of Laws* § *241,* is as follows: "The validity of a trust of an interest in land is determined by the law of the state where the land is." The New York courts having determined that question, the New Jersey courts are precluded from doing otherwise.

"The effect of language used in a will of land (often called construction of the will) is determined by the law of the state of the *situs* of the land. The law of the state of *situs* determines the nature of the estate conveyed, the question whether the rule in Shelley's case applies, the question whether a remainder created is vested or contingent, and the effect of the will on after-acquired property. Therefore, a will which devises land in two states may have different effects and create different interests in the lands, though of course the interpretation properly so called should be the same. So the question of whether a blank in a will of land may be filled by evidence *aliunde* is determined by the law of the state of *situs*. The will of a Pennsylvania man was decided by a Pennsylvania court to give a certain legatee one-half of the estate. In Illinois there was land of the testator, and other land bought by the executors with personal property belonging to the estate. The Illinois court held that as to the latter land the legatee got one-half, according to the Pennsylvania decision, since it was bought by movables, which were governed by the Pennsylvania law; but as to the land of the testator the Illinois law governed, and according to that law the legatee received only one-ninth." *Beale's Conflict of Laws 974* § *251-3.*

"The devise of land under a trust to sell does not remove the land from the power of the state of *situs*. So in *Lowe* v. *Plainfield Trust Co. (216 A. D. 772, 215 N. Y. S. 50)*, where a testator, wishing to evade the New York Mortmain act, left New York land to his executor to sell and give the proceeds to a charity, it was held that the devise was in all respects governed by the law of New York, and not, as a gift of personalty, by the law of the testator's domicil; and the gift therefore failed. So where a person who died domiciled in a foreign country left an interest in the proceeds of sale of English freeholds, which were subject to a trust for sale but not yet sold, it was held that this was a gift of an interest in an immovable, and therefore governed by the *lex situs*." *Beale's Conflict of Laws 975* § *251-4.*

Among the cases cited in the text is *Pratt* v. *Douglass, 38 N. J. Eq. 516.* A testator domiciled in California died possessed of considerable personal property and of lands situate in California and New Jersey. The law of California recognizes two kinds of property as between husband and wife, separate property and community property. It was held that the community law was applicable to the testator's personal estate and to the proceeds of the sale of his California lands, but it had no applicability to the land situate in this state or the proceeds of the sale thereof.

In *Clarke* v. *Clarke, 178 U. S. 186,* the question at issue was the effect to be given to a judgment rendered in the supreme court of South Carolina, testatrix' domicile, and a judgment of the supreme court of Connecticut respecting real estate situate in that state. The South Carolina court held that the will worked an equitable conversion into personalty at the time of death of testator of all her real estate wherever situate and the executor was authorized to administer the same and to sell and convey for the purpose of executing the will. The supreme court of Connecticut refused to follow the judgment of the supreme court of South Carolina, and the case was brought to the supreme court of the United States under the full faith and credit clause. Mr. Justice White, afterwards Mr. Chief-Justice, said in delivering the opinion of the court: "It is a doctrine firmly established that the law of a state in which land is situated controls and governs its transmission by will or its passage in case of intestacy. This familiar rule has been frequently declared by this court, a recent statement thereof being contained in the opinion delivered in *DeVaughn* v. *Hutchinson, 165 U. S. 566,* where the court said: 'It is a principle firmly established that to the law of the state in which the land is situated we must look for the rules which govern its descent, alienation and transfer, and for the effect and construction of wills and other conveyances. *United States* v. *Crosby, 7 Cranch. 115; Clark* v. *Graham, 6 Wheat. 577; McGeon* v. *Scales, 9 Wall. 23; Brine* v. *Insurance Co., 96 U. S. 627.'"* In speaking of the contention of the plaintiffs in error, that the South Caro-

lina judgment must be given full force and effect, the court further said: "The proposition relied on, therefore, is this, although the court of last resort of Connecticut [declaring the law of that state] has held that the real estate in question had not become personal property by virtue of the will of Mrs. Clark, nevertheless it should have decided to the contrary, because a court of South Carolina had so decreed. This, however, is but to argue that the law declared by the South Carolina court should control the passage by will of land in Connecticut, and, therefore, is equivalent to denying the correctness of the elementary proposition that the law of Connecticut, where the real estate is situated, governed in such case." See in accord *Olmsted* v. *Olmsted, 216 U. S. 393.*

In *Folsom* v. *Board of Trustees of Ohio State University, 210 Ill. 404; 71 N. E. Rep. 384,* the Illinois supreme court held: "The validity and construction of a will devising land situated in Illinois will be determined by the courts of Illinois, which courts will not be governed by the decisions of courts of other states."

In *Holmes* v. *Dunning, 260 Mass. 250; 157 N. E. Rep. 358,* it was held: "A will is ordinarily construed according to the law of the testator's domicile at the time of his death. Rule that a will is ordinarily construed according to law of testator's domicile at time of death controls as to personal property wherever situated, but its effect and validity as to disposition of real estate depends on law of place where it is situated."

The result reached is that the decree below must be modified in conformity with this opinion.

*For modification*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 15.