OF

# THE STATE OF NEW JERSEY.

OCTOBER TERM, 1894.

ALEXANDER T. McGILL, ORDINARY.

ABRAHAM V. VAN FLEET, VICE-ORDINARY.

ELLIE J. MOORE, JULIA J. ROGERS' and MATTIE BRANDT

*v.*

LISCOMB T. ROBBINS, surviving executor of the will of William D. Jewell, deceased, and EDWARD JEWELL.

Where a testator orders his lands to be sold, the conversion will, unless a contrary intention distinctly appears, be deemed to have been directed merely for the purposes of the will, and consequently if those purposes fail or do not require it, it will, in equity, be considered land and be given to the heir.

137

On appeal from a decree of distribution made by the orphans court of Mercer county.

*Mr. William M. Lanning,* for the appellants.

*Mr. James E. Hayes,* for Edward Jewell, who is one of the next of kin of William D. Jewell, deceased.

THE ORDINARY.

The decree appealed from distributes among thirteen surviving nephews and nieces of William D. Jewell, deceased, who are his next of kin, some $63,000 surplus of his estate over that portion thereof which his will disposed of.

The appeal is taken by the three children of a deceased nephew, because they claim that the sum distributed consists in part of $15,183.39, proceeds of the sale of real estate, which should have been regarded as realty, and, in part, apportioned to them.

The will of Mr. Jewell, after directing that his debts and funeral expenses should be paid by the executors thereof, continues in this language :

"*Article II.* It is my will and I do order and direct that all my real estate shall be sold by my executors within one year after my decease, or as soon thereafter as to them shall seem wise and in any manner that to them shall seem best, and I do hereby authorize and empower them to execute therefor good and sufficient titles."

It then proceeds, by Article III., to bequeath general money legacies aggregating $16,300 and a specific legacy of a silver watch, and to devise a wood-lot of land. Then, by Article IV., it continues :

"I give and bequeath the sum of one hundred thousand dollars ($100,000), to be divided by my executors into five equal parts, and the same to be distributed by them as follows, viz."

Then follows a specification of the way in which the $100,000 is to be distributed, the result of which is that one of the parts

is to be divided among the children and the children of deceased children, of each of the testator's brothers and sisters, including the appellants.

The real estate, exclusive of the wood-lot, was sold by the executors for $15,183.39. The debts and legacies, including the $100,000, have all been paid, and there remains in the hands of the executors, undisposed of by the will, $63,000.

It is conceded that if the proceeds of the sale of the real estate are to be treated as personal property, the decree of the orphans court is correct.

The question presented and argued is, whether the testator meant that his realty should be converted into money and treated as such in the settlement and distribution of his estate.

That a testator may direct a conversion of his real estate into personalty for all purposes or for special purposes indicated by his will, cannot be questioned. As to the time when the conversion will take effect, Chancellor Zabriskie, in *Cook's Executor* v. *Cook's Administrator, 5 C. E. Gr. 375, 377,* said :

" When land is directed to be sold, absolutely and positively, without any time fixed for the sale, it is considered as converted into money from the death of the testator, but for this the direction must be imperative. If it is optional with the executor whether to sell or not to sell, or if it is only an authority to sell without any direction, then the land retains its character as land until it is actually sold. If the direction of the will, as to the proceeds, requires a sale, it is equivalent to a positive direction to sell and the land is deemed personal property from the death of the testator."

This epitome has the approval of our equity courts. *Wurts' Executor* v. *Page, 4 C. E. Gr. 365, 375; Dutton* v. *Pugh, 18 Stew. Eq. 426, 428; S. C. on appeal, 1 Dick. Ch. Rep. 554, sub nom. Jones* v. *Jones; Roy* v. *Monroe, 2 Dick. Ch. Rep. 356, 359.*

It is also established that the disposition which the will makes of the proceeds of a conversion of real estate required, is the disposition of personalty. *Dutton* v. *Pugh, supra; Roy* v. *Monroe, supra; Scudder* v. *Van Arsdale, 2 Beas. 109.*

But as to succession to it, the rule is that conversion directed by a testator is a conversion only for the purposes of the will, and all that is not wanted for those purposes goes to the persons who would have been entitled but for the will. *Theob. Wills 197; Ackroyd* v. *Smithson, 1 Bail Ct. Cas. 503; S. C., 1 Lead. Cas. Eq. 1171.* Vice-Chancellor Van Fleet, in *Roy* v. *Monroe, supra,* states this rule with more particularity in the following language:

"The money must, for the purposes of succession, be regarded as possessing precisely the same heritable and transmissible quality or character which the property it represents had at the death of the testator, and it must be given to the heir if it represents land, and to the next of kin if it represents personalty, unless the testator has, in his discretion for conversion, plainly declared that his intention in directing a conversion was not merely to change the nature of his property for the purposes of his will, but to change it for all purposes, whether it passed under the will or not."

The principle has had recognition, also, in *Brearly* v. *Brearly, 1 Stock. 21,* and *Lerch* v. *Oberly, 3 C. E. Gr. 575, 578.* In *Wms. Exrs. 584,* it is said :

"It is now fully established that, in order to exclude the heir, it is not enough that the testator shows an intention that his real estate should become money after his death ; it must also be apparent that he meant it to be treated as if it had been personal estate before his death ; for, if the property in question was real estate at his death, the *onus* is on the next of kin to show a devise of it in his favor; and, though the will may determine in what quality the property shall be taken by those on whom it may devolve, yet, if it does not also determine who are the persons to take, the original right of the heir-at-law must prevail. Therefore, the testator's declaration, however explicit, that the estate shall be absolutely converted, *e. g.,* a direction that it shall be sold and deemed part of his personal estate, will not exclude the heir, because such a direction does not, generally speaking, amount to a gift by implication to the next of kin. * * * It is plain, therefore, that where the conversion of land into money is directed by the testator for a particular purpose, which fails (as in the case of the death of a party intended to be benefited), so much of the estate, or of its produce, as remains undisposed of, will result to the heir."

The purposes of Mr. Jewell's will were the payment of his

debts, funeral expenses, $16,300 in legacies outside of his kindred and $100,000 in legacies within his kindred.     Beyond those payments and the bequest of a silver watch and the devise of a wood-lot, the will is silent save in its direction that the testator's real estate shall be sold.

The provision for the conversion stands by itself, disconnected in language and paragraph with the subsequent bequests.     It is only by implication, from the scheme of the will and the fact of the existence of the direction for conversion, which in absence of such implication would be a useless requirement, that we can conclude that the testator's design was to make his whole estate answerable for the accomplishment of his purpose, that the legacies provided should be paid, and to that end that the executors should be clothed with power of sale to raise a fund from the real estate to supplement the personalty, if need be, in making the payments directed, or, perhaps, more accurately and strongly speaking, directing them to sell the real estate in order that they should have a fund in readiness for the purpose indicated.

The question whether proceeds of the sale of realty, after they have become part of a blended fund for the payment of legacies, will go to the heir, is not presented.     There is no indication of an intention, either by expression or by implication in the will considered, that the moneys realized from the personalty and the realty are to be blended in a common fund.     The accomplishment of the purposes of the will does not require such blending of the moneys.     The personalty is primarily bound to the payment of debts and legacies.     It is only upon its exhaustion that the fulfillment of the will necessitates a call upon the realty, and, in absence of provision to the contrary, we must imply that this legal order of liability is to be observed in furtherance of the rule stated, that the heir is not to lose anything by the direction for conversion except that which the will plainly takes from him.

The event of the administration of the estate has shown that the personalty was more than sufficient to bear the burden to which it was liable, and therefore that no necessity existed for calling upon the proceeds of the realty.     Without the assistance

of those proceeds, the purposes and demands of the will have been fulfilled. The conclusion therefore follows that the proceeds of the realty have existed as a supplementary fund, available for the payment of debts and legacies, and at the same time, as realty for the purposes of succession, and that they should have been distributed according to the statute regulating the descent of real estate.

It is noteworthy that the disposition the will makes of the $100,000 follows the statute of descents, and that when that circumstance is considered with the fact that the realty was subjected to the creation of a fund for that $100,000, as though the testator anticipated a possible insufficiency of personalty, it is not a forced inference that the testator's contemplation was the distribution of his entire estate according to the statute regulating the descent of real estate.

The conclusion stated leads to the reversal of the decree of the orphans court.