MARY FISCHER, RESPONDENT, v. EMIL STUART, APPELLANT.

Submitted May 27, 1927—Decided October 17, 1927.

For the appellant, *Clarence Linn*.

For the respondent, *McKirgan & Gilson*.

The opinion of the court was delivered by

MINTURN, J. Conceiving that in virtue of the alleged invalid direction contained in the ninth clause of her father's will, the plaintiff acquired a valid title to a one-sixth interest in the homestead property of her father, Francis Hayek, and that she was legally entitled to dispose of the same, the plaintiff entered into a written contract to sell and convey the same to the defendant.

The *locus in quo* is situated at Fort Lee, where Francis Hayek maintained a summer residence. The plaintiff is one of his six children, all of whom were living at his death in the city of New York, where he resided at the time of the execution of his will.

Under the ninth clause of his will, which presents the basis of this controversy, the testator provided:

"As to my homestead or summer residence at Fort Lee, consisting of three acres with all the buildings and appurtenances [excepting, of course, a plot of ground on the south side forty-four feet in front and one hundred feet deep, with the house upon it built by my son Louis], I direct that this homestead property shall be taken care of and kept in order

and repair by my said trustees for the benefit, use and enjoyment of all my grandchildren [children of my six children], including those that may be born after my decease, until the youngest of my said grandchildren becomes ten years old, at which time the said homestead property may be sold, if a sale be then deemed desirable, and the proceeds of the sale be distributed equally among my said grandchildren."

The defendant conceiving that this provision of the will vested a valid title to the *locus in quo* in the grandchildren, and that the plaintiff therefore, as one of the six surviving children, was not seized as heir-at-law of an intestate of a one-sixth interest in the premises in question, declined to carry out his contract, and the plaintiff then brought this suit to recover the amount of the contract price.

The facts not being disputed, the learned trial court, upon motion, ordered judgment entered in favor of the plaintiff, for the amount demanded, and, hence, this appeal. The basis of the plaintiff's claim, as well as the legal theory upon which this judicial action was based, is that the provision of the will referred to is void under the statute of perpetuities, as it exists in statutory form in the State of New York, where the testator resided, wherein it prohibits the power of suspension of alienation by a testator: "For a longer period than during the continuation of not more than two lives in being at the creation of the estate." 1 *N. Y. Rev. Stat., p.* 723, § 15.

This state, however, has received and perpetuated the common law against perpetuities in its original form, without change or modification; which rule validates testamentary provisions of this nature: "When the term is measured by the life or lives of a person or persons in being, at the time of the creation of the interest, and twenty-one years thereafter; otherwise they are invalid and void."

Manifestly, therefore, the basic inquiry presented is whether the statute of perpetuities of the State of New York, or that of the State of New Jersey, is applicable to the provisions of a will devising real estate where the property is located in

the State of New Jersey. If the *lex domicillii* be held to be the controlling factor and not the *lex rei sitae,* the judgment below was legally correct. But since the principle is concededly fundamental that laws, except by comity, can have no extra territorial effect, and particularly when the effect of their application is to control the transmission of the ownership of the soil of the state affected, it becomes difficult to perceive upon any recognized conception of state sovereignty how the devolution of the soil of this state can be controlled by the operation of a law of a foreign state.

The common law distinction, of course, between the effect of the law of domicile upon personalty, under the maxim *Mobilia personam sequuntur immobilia situm,* and the doctrine regarding property in the soil of the state affected by the controversy, has always been preserved *ex necessitate,* for the preservation of the territorial integrity of the state itself. *United States* v. *Crosby (U. S.),* 7 *Cranch* 115; *Olmsted* v. *Olmsted,* 216 *U. S.* 386; *Story Confl. L.* 424, *&c.; Whart. Confl. L.* 273, *&c.*

Thus, Chancellor Kent declares: "The general doctrine of international law is that wills concerning lands must be executed according to the prescribed formalities of the state in which the land is situated." 4 *Kent Com.* 513.

In conformity with this conception, it was held, at an early day, under the common law procedure of New York, that the "validity of a testamentary trust as to real estate is determined exclusively by the *lex rei sitae,* and the courts of another jurisdiction in which the trustees may be found may direct them to carry the trust into effect, although it would be invalid if the real estate were situated in such other state." *Hawley* v. *James (N. Y.),* 7 *Paige* 213.

In this state, Vice-Chancellor Pitney dealt with the subject to the same purport, in an unofficially reported case. *Guarantee Trust Co.* v. *Maxwell,* 30 *Atl. Rep.* 339.

It is manifest, therefore, that the interest devised to the grandchildren vested in them upon the death of the testator; the time of their enjoyment of it only being postponed until the youngest child should reach the age of ten years. *Hag-*

*gerty* v. *Hockenberry*, 52 *N. J. Eq.* 354; *McGill* v. *Trust Co.*, 94 *Id.* 657.

Therefore, in the absence of any specific direction by the testator working an equitable conversion of the lands thus devised, it becomes manifest that the statute of perpetuities of the State of New York has no application to the situation, and that the title of the plaintiff under the will must be determined by the law of this state; the result being that the judgment under review must be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 15.