JENNIE D. KUIKEN, PLAINTIFF-APPELLANT, v. A. GROVER SIMONDS AND MARY M. SIMONDS, INDIVIDUALLY AND AS EXECUTORS UNDER THE LAST WILL AND TESTAMENT OF CHARLES SIMONDS, DECEASED, ET AL., DEFENDANTS-RESPONDENTS.

Argued December 5 and 12, 1949—Decided January 16, 1950.

*Mr. Peter Hofstra* argued the cause for appellant (*Mr. Joseph J. De Luccia,* attorney).

*Mr. Milton Schamach* argued the cause for defendant-respondent Helen Cole Simonds (*Mr. J. Mortimer Rubenstein* on the brief).

*Mr. William W. Evans* argued the cause for the remaining defendants-respondents (*Messrs. Evans, Hand & Evans,* attorneys).

The opinion of the court was delivered by

CASE, J. We are called upon to construe a will and to consider the equitable doctrine of conversion.

Charles W. Simonds died August 28, 1920, leaving a last will which provided as follows in its third, fourth and final clauses:

"THIRD: I give, devise and bequeath the use and income of all the rest residue and remainder of my estate both real and personal unto my beloved wife Margaret Simonds, together with so much of the principal as may be necessary for her support and maintenance, for and during the term of her natural life.

"FOURTH: Upon the death of my said wife Margaret Simonds, I order and direct my executors hereinafter named or the survivors of them, to sell and dispose of all my real estate then remaining and to divide all my then remaining estate both real and personal as follows:

"To my son Grover Simonds, a one-sixth part thereof, to my daughter Ellie Forshay, a one-sixth part thereof, to my son Joseph Simonds a one-sixth part thereof, to my daughter Louise Simonds, a one-sixth part thereof, to my daughter Alice Anderson a one-sixth part thereof and to Mary *M.* Simonds, widow of my son Edgar Simonds, the remaining one-sixth part thereof for the support, education and maintenance of her son Charles Edgar Simonds.

"LASTLY: I nominate and appoint my son Grover Simonds, my daughter Ellie Forshay, and my daughter-in-law Mary *M.* Simonds, executors of this my last will and testament with full power and authority to sell and dispose of any or all of my real estate, excepting however the property above specifically devised to the children of my deceased brother, John Simonds, together with the power to mortgage the same or any part thereof, should the same be necessary for the proper support and maintenance of my said wife."

His real estate consisted of only two parcels, one in the State of New York, which he specifically devised in the second paragraph of his will; the other, his farm, the subject of this

litigation. The widow, Margaret Simonds, died November 24, 1939. The executors have not yet exercised their power of sale.

Joseph Simonds, a son, given a one-sixth part in the fourth paragraph, was sued and subjected to a judgment. The judgment creditor caused execution to issue and levy to be made thereunder upon what was assumed to be Joseph's undivided one-sixth interest in the lands. The levy proceeded to sheriff's sale on December 15, 1928, at which the plaintiff, Jennie D. Kuiken, bought and pursuant to which she received and recorded a deed. On April 14, 1947, Kuiken filed this bill in Chancery seeking a partition of the land or, if that should prove impracticable, a sale of the land and a division of the proceeds, and also seeking a discovery and an accounting by the executors with respect to the rents, issues and profits arising from the lands. The defendants resisted upon the ground that the will converted the land into personalty; and one of the defendants sought by counterclaim to set aside the levy and sheriff's deed given thereunder and to obtain an injunction against the claiming of any right or interest thereunder. We find no reference in the briefs or in the opinion below to the counterclaim as such, and, therefore, we assume that it is not before us as a distinct pleading.

The case at the trial level was decided in the Superior Court, Chancery Division, against the plaintiff, and upon appeal that determination was affirmed by the Appellate Division. The findings as they come to us are that there was an equitable conversion of the real estate, that the partition should be denied and the prayer for an accounting should fall therewith, that upon a sale by the executors the sheriff's deed will become "null and void and of no effect" and that the bill of complaint should be dismissed.

The references to the real estate in the third, fourth and last paragraphs of the will are clearly and exclusively to the farm property. The testator (paragraph "third") gave the use of it to his wife during her lifetime together with the use of his personal property and the right to consume the principal if necessary for her support, and (paragraph "lastly") he also

gave to his executors full power to sell or mortgage his real estate if that should be necessary for the proper support and maintenance of his wife. The suitable maintenance of his wife was paramount in his mind, and his entire estate, except the farm in New York State devised in paragraph "second" to the children of a deceased brother, was in effect placed in a trust to that end. When that purpose should have been served, that is to say, upon his widow's death, it was the testator's command (paragraph "fourth") that the executors sell and dispose of all his real estate then remaining and divide all his then remaining estate both real and personal in one-sixth parts among the designated legatees.

█ If the authority to the executors to sell contained in the paragraph entitled "lastly" is read, as we think it should be, in conjunction with the third paragraph, the provisions take logical form and leave but one doubtful phrase, namely, the direction in the fourth paragraph "to divide all my then remaining estate both *real* and personal" following the direction "to sell and dispose of *all* my real estate then remaining." Manifestly, when the executors should sell all of the real estate, there would be no real estate left to divide. The direction to sell is clear and peremptory. The opposite conception of the division of the farm, a single operative unit, and if the executors had earlier sold some of it for the widow's maintenance only the remnant of a farm, into six parts, one of them to be used for the support, education and maintenance of a fatherless grandson, is incongruous. We construe the will of the testator to be that the land or a part of it should be sold or mortgaged during the widow's lifetime if necessary for her support, and that upon her death what was left would mandatorily be sold and the proceeds divided. Thus, there was an imperative direction to sell.

██ The doctrine of equitable conversion is a development of the principle that equity regards as done that which ought to be done. It is not applicable to estates at law or to courts of law. *Teneick v. Flagg,* 29 N. J. L. 25, 31 (*Sup. Ct.* 1860). It is applied upon the theory of carrying out the instruction of the testator. The effects ordinarily extend only

to those persons who claim or are entitled to the property under or through the instrument, or directly from or under the author of the instrument. *Pomeroy's Equity Jurisprudence (Fifth Edition) Vol.* 4, § 1166. Equitable conversion is a fiction to protect beneficiaries and to sustain and carry out the intention of the testator or settlor and rests in the personal intention of the owner of the property. *While v. Brinkerhoff,* 109 *N. J. Eq.* 553 (*E. & A.* 1931).

The doctrine has been defined as "that change in the nature of property by which, for certain purposes, real estate is considered as personal, and personal estate as real, and transmissible and descendable as such." *Pomeroy,* § 1159. The general rule has long been recognized in this state that where land is directed to be converted into money by the executors and the proceeds distributed in a manner designated by the testator, such proceeds are to be regarded as gifts of money and not as devises of real estate. *Triplett v. Ivins,* 93 *N. J. Eq.* 202, 204 (*E. & A.* 1921).

The time from which the conversion takes effect, like all other matters of intention, depends upon the provisions of the particular instrument. But where there is an absolute direction to sell, conversion becomes effective from the death of the testator unless his intention appears to have been otherwise. *Pomeroy,* § 1162; *While v. Brinkerhoff, supra.*

Subject to modification by intention, the generally accepted rule in this state is that when land is directed to be sold, absolutely and positively, it is considered as converted into money from the death of the testator, or if it is optional with the executor whether to sell or not to sell, or if it is only an authority to sell without any direction, then the land retains its character as land until it is actually sold; if the direction of the will as to the proceeds require a sale, it is equivalent to a positive direction to sell and the land is deemed personal property from the death of the testator. The essence of the rule was stated in *Cook's Executor v. Cook's Administrator,* 20 *N. J. Eq.* 375, 377 (*Ch.* 1869), a decision which has been widely cited in our cases and quite uniformly followed. Where an equitable conversion has been effected

Chancery will not partition. *Weber v. Beales,* 140 *N. J. Eq.* 423 (*E. & A.* 1947); *Braun v. Muller,* 132 *N. J. Eq.* 56 (*Ch.* 1942); *Cahill v. Cahill,* 62 *N. J. Eq.* 157 (*Ch.* 1901).

It must be conceded that *Morse v. Hackensack Savings Bank,* 47 *N. J. Eq.* 279 (*E. & A.* 1890), and the cases therein cited, appear to look toward the view that where there is no actual devise of the lands the title and usufruct descend to the heirs at law subject to the exercise of the power, and that in such an instance the conversion becomes effective on the exercise of the power; but we believe that a careful analysis of that decision and of the cases cited in its support will disclose that they turn upon the intention of the testator and that, therefore, the divergence from the general rule is seeming rather than real. In the present case the legal title was barren of any usufruct between the death of the testator and the time when the sale became mandatory. The use and income went to the testator's wife during her lifetime and the will made the sale imperative at her death. The failure of the executors to sell at the appointed time will not be permitted to frustrate the purpose of the testator. There is nothing to indicate an intention by the testator that his heirs should have any rights in the land other than their prorated shares of the proceeds of sale.

Inasmuch as the will gave imperative direction to the executors to make sale and we find no indication of an intent by the testator contrary to a conversion, we conclude that there was an equitable conversion of the real estate into personalty effective as of the date of the testator's death. From this it follows that a suit for partition will not be entertained. The prayer for an accounting is an incident and falls with the main action.

The judgment below will be affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD and BURLING—6.

*For reversal*—None.