55 N.J. Super. 36 (1959)
149 A.2d 801
IN THE MATTER OF THE PROBATE OF THE ALLEGED WILL OF ELIZABETH McDOUGAL (McDOUGALL), ALSO KNOWN AS BESSIE McDOUGAL (McDOUGALL), DECEASED. IN THE MATTER OF THE ESTATE OF ELIZABETH McDOUGALL, A/K/A BESSIE McDOUGALL.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 1959.
Decided March 16, 1959.
Before Judges PRICE, SCHETTINO and GAULKIN.
Mr. Paul Colvin argued the cause for appellants.
Mr. William J. Tiernan argued the cause for respondents, Walter F. McDougall and Vincent McDougall (Messrs. Tiernan and Strulowitz, attorneys).
PER CURIAM.
The judgment is affirmed for the reasons stated by Judge Mintz in his opinion, reported in 49 N.J. Super. 485 (Cty. Ct. 1958). See also Fidelity Union Trust Co. v. Ackerman, 123 N.J. Eq. 556 (E. & A. 1938); 11 Am. Jur. Conflict of Laws § 96, p. 384; Annotation 43 A.L.R.2d 569, 571, 596.
SCHETTINO, J.A.D. (dissenting).
I am unable to agree with the majority. In order to facilitate an understanding of my views I am setting forth the history of this litigation.
Appeal is from a judgment of the County Court, Probate Division, denying appellants' claim that a certain California holographic will brought about an equitable conversion of decedent's real estate located in New Jersey and passed it under that will as personalty, and holding that the holographic will passed only personalty and that a prior formally valid New Jersey will passed title to the real estate.
*37 The testatrix, Elizabeth McDougal (McDougall), also known as Bessie McDougal, died on May 23, 1957 at the age of 71, a resident of California continuously for the last 19 years of her life. Prior thereto she had lived in Dover, New Jersey, the place of her birth. She never married, and left her surviving a brother and the issue of two deceased brothers. Her estate consisted of a one-family house in Dover, New Jersey, and personal property in this State amounting to about $2,500 and in California amounting to $670.
During her lifetime decedent executed two wills: a formal will, dated April 27, 1935, executed in New Jersey in accordance with its laws; and a holographic will, dated April 4, 1956, executed in the State of California in compliance with California law but not with New Jersey law.
Ezra McDougal, a brother of decedent, filed a complaint seeking his appointment as administrator, or administrator cum testamento annexo of Elizabeth McDougal's estate. He alleged that decedent left the holographic document, purporting to be her last will and testament and demanded judgment (a) admitting the holographic will to probate and granting him letters of administration with will annexed; (b) determining its effect upon the real property as well as the personal property of the decedent situated within New Jersey, and, (c) determining its effect upon the personal property of decedent situated in California.
The holographic will, in its entirety, is as follows:
"April 4  1956
"I, Elizabeth McDougal of the City of Los Angeles and State of California.
"Declare this to be my last will & testament.
"1st I order & direct my Executors to pay all my just debts and funeral expenses as soon as convenient after my decase [decease].
"2nd I am leaving my Brother Ezra McDougall One dollar for the reason he received his share from my fathers estate that was turned over to me by my Brothers Robert & Walter now decase [deceased]
"3rd I am leaving property at 11-E Munson Ave. to be sold & divided equal to my Brothers children Robert & Walters.
"Elizabeth McDougall L.S."
*38 Thereafter, Walter F. McDougal obtained an order to show cause why the New Jersey will should not be admitted to probate and why letters of administration cum testamento annexo should not be issued to him. This will devised a life estate to testatrix' brother Walter, and the remainder to her nephews Walter and Vincent, sons of her brother Walter, and to the exclusion of her brother Robert's children.
The trial court outlined the issues involved in its opinion:
"Robert's children object to the probate of the 1935 will and contend that only the holographic instrument should be admitted to probate. The issue is whether the Dover property is devised pursuant to the formally executed New Jersey will in 1935, or does the property, or the proceeds from the sale thereof, pass in accordance with the 1956 California holographic will.
Robert's children concede the insufficiency of this document to effectively devise realty in New Jersey, but contend in brief that this instrument contains a direction to sell the property and divide the proceeds. As a result of this direction, they assert that the principle of equitable conversion applies, that is, the real property is deemed personalty and the instrument, being valid to pass personalty in the State of California, where decedent was domiciled, is likewise valid to pass personalty (the proceeds from the sale of the Dover property) in New Jersey."
The trial court held that the California holographic will was ineffective to devise real estate in New Jersey because N.J.S. 3A:3-2, provides:
"* * * a will to be valid shall be in writing and signed by the testator, which signature shall be made by the testator, or the making thereof acknowledged by him, and such writing declared to be his last will, in the presence of 2 witnesses present at the same time, who shall subscribe their names thereto, as witnesses, in the presence of the testator."
The court further held that (1) the instrument was likewise ineffective to revoke a prior valid devise as the purported revocation did not comply with the provisions of N.J.S. 3A:3-3 in that it was not executed in the same manner in which wills are required by law to be executed; (2) whether an equitable conversion was effected by the will was to be determined by the law of the situs of the real *39 estate, i.e., New Jersey; and (3) under the case law of this State such equitable conversion could not be effectuated by the holographic will. The court relied on In re Winter's Estate, 24 N.J. Misc. 167 (Orph. Ct. 1946) and Jenkins v. Guarantee Trust & Safe Deposit Co., 53 N.J. Eq. 194 (Ch. 1895), reversed, 53 N.J. Eq. 200 (E. & A. 1895). It declared that the fiction of equitable conversion must not be employed:
"* * * where the consequence is circumvention of a basic principle of law. Simply stated, Elizabeth McDougal could not make the conversion without exercising dominion over the land. She was obliged to exercise that dominion in accordance with New Jersey law. The holographic instrument does not comply with such law, and does not make a legally effective disposition of the Dover real property. It therefore cannot be admitted to probate for such purpose."
However, the trial court admitted the holographic will to probate "limited in application to the personalty of the testatrix situate in New Jersey at the time of her death," and also admitted the New Jersey will to probate, holding that it governed the disposition of the New Jersey real estate.
Appellants are the children of Robert McDougal, a deceased brother of the decedent. Respondents are Walter F. and Vincent McDougal, sons of Walter McDougal, Sr., another brother.
On this appeal the appellants argue that the California will, valid in the state of decedent's domicile, subsequent in time to the New Jersey will and inconsistent with it, effectively revoked the New Jersey will. They further contend that the holographic will converted the New Jersey realty into personalty so that it worked a bequest of legacies and not a devise of realty. They argue that as the holographic will converted the property into personalty, the requisite formalities of the lex domicilii are governing.
I emphasize the principles that effect should be given to a will wherever possible, In re Pistor's Estate, 53 N.J. Super. 139, 147 (App. Div. 1958); Greene v. Schmurak, 39 N.J. Super. 392, 400 (App. Div. 1956) certification denied 21 *40 N.J. 469 (1956), and that a will should be so construed as to be upheld if possible and that the intent of the testator should be effectuated. Watson v. Brower, 24 N.J. 210, 218 (1957); Ferguson v. Rippel, 23 N.J. Super. 132, 138 (App. Div. 1952); 5 N.J. Practice (Clapp, Wills and Administration), § 108, p. 251 (1950).
I agree with the majority that there is no merit to appellants' contention that the California will worked an effective revocation of the New Jersey will insofar as the New Jersey realty is concerned. N.J.S. 3A:3-3, N.J.S.A., provides in part, that:
"No written will, or any devise or bequest therein, or any clause thereof, may be revoked except by:

* * * * * * * *
b. Another will or codicil in writing revoking or altering the same, or other writing declaring the revocation executed in the manner in which wills are required by law to be executed." (Emphasis added.)
and is dispositive. The "revocation of a duly executed will and testament can be had only in the mode and manner ordained by the statute." In re Sapery's Estate, 28 N.J. 599, 609-610 (1959). See also Restatement, Conflict of Laws, § 250. Generally, the New Jersey will remains in full force and effect in regard to any real estate owned by decedent in this State. However, the California holographic will is operative as to decedent's personal estate, wheresoever situated.
I next consider appellants' contention that the holographic will converted the realty so that it became personalty and thus passed as personalty under that will. In Guaranty Trust Company of New York v. Stevens, 28 N.J. 243, 257 (1958) Mr. Justice Heher stated the general rule that:
"* * * the validity of bequests of personalty depends upon the law of the testator's domicile, and such a will executed according to the lex domicilii is operative upon personal property wherever situate. This is according to reason and logic, if not indeed constitutional principle. Nelson v. Potter, supra [50 N.J.L. 324 (Sup. Ct. 1888)] See 5 N.J. Practice (Clapp, Wills and Administration), pp. 74, 214 and 1956 Supp. 94, n. 9." *41 The validity of a devise of real property is governed by the law of the situs. United States v. Crosby, 7 Cranch 115, 116, 11 U.S. 115, 116, 3 L.Ed. 287 (1812); Kuiken v. Simonds, 3 N.J. 480 (1950).
As I view the problem it is simply stated to be: Did the holographic will effectively convert the New Jersey real estate into personal property and thereby permit it to pass as personalty; or does the fact that the will is formally invalid to pass real estate in this State prevent the conversion and the passing of the real estate as personal property? The general rule is that the law of the state wherein the real property is situated, and not the law of the state of the testator's domicile, determines whether real property is, by the terms of the will, to be treated as equitably converted. Goodrich, Conflicts of Law (3rd ed.) § 167, p. 509. In Kuiken, supra (3 N.J. at page 486) Mr. Justice Case thoroughly reviews the doctrine of equitable conversion, stating:
"The general rule has long been recognized in this state that where land is directed to be converted into money by the executors and the proceeds distributed in a manner designated by the testator, such proceeds are to be regarded as gifts of money and not as devises of real estate. Triplett v. Ivins, 93 N.J. Eq. 202, 204 (E. & A. 1921).
The time from which the conversion takes effect, like all other matters of intention, depends upon the provisions of the particular instrument. But where there is an absolute direction to sell, conversion becomes effective from the death of the testator unless his intention appears to have been otherwise. [citations]
Subject to modification by intention, the generally accepted rule in this state is that when land is directed to be sold, absolutely and positively, it is considered as converted into money from the death of the testator, or if it is optional with the executor whether to sell or not to sell, or if it is only an authority to sell without any direction, then the land retains its character as land until it is actually sold; if the direction of the will as to the proceeds require a sale, it is equivalent to a positive direction to sell and the land is deemed personal property from the death of the testator."
And in 7 New Jersey Practice 436, Judge Clapp states the general rule that:
*42 "Where a will expressly imposes upon the executor or trustee thereunder a duty to sell land and either distribute the proceeds in a designated manner or hold them in trust, such land is deemed to be personalty; and if the person, for whose benefit the property is given, should die, it will go to the taker of his personalty."
The Restatement, Conflict of Laws, § 209 (1934), states that "Whether interests in land are equitably converted into personal property by dealings with the land depends upon the law of the state where the land is." See also Ibid, § 249; 43 A.L.R.2d, 569, 573; Toledo Society for Crippled Children v. Hickok, 152 Tex. 578, 261 S.W.2d 692, 697, 43 A.L.R.2d 553 (Sup. Ct. 1953); 4 Page on Wills 727 (3rd ed. 1941); and, generally, 1 Tiffany, The Law of Real Property, § 298 (3rd ed. 1939).
We are not concerned here with a foreign will whose words under New Jersey law would not create a conversion. In such a case, obviously New Jersey law would apply. For example, if the language of the holographic will were such that it would effectuate a conversion under California law but not under New Jersey law, then clearly there would be no conversion and the holographic will could not affect the New Jersey real estate. The language used in the will must be language that is sufficient to work a conversion under the decisions of New Jersey.
But it is clear that by the wording in paragraph "3rd" of the holographic will, supra, the direction to sell, is absolute and mandatory. Setting aside for the moment the problem of complying with the New Jersey formalities, it is also clear that by that wording a conversion would be effectuated whether under California or New Jersey law. Kuiken case, supra (3 N.J. at page 486). We are not here concerned with a power of sale, or an "implication to sell" as contended by respondents, but rather with an express direction to sell. When a power of sale is created, the conversion does not take place until the sale, whereas in the case of a direction to sell the conversion takes place at the instant of the testator's death. Kuiken case, supra; 19 Am. Jur. 21; 18 C.J.S. Conversion § 23, p. 63; Tiffany, supra, at page 513. It *43 must be determined whether this fact is sufficient to constitute the will one of personal property and conclude that we are thereby governed by the law of the domicile, or hold that even though the wording would constitute a conversion, yet the will itself would have to comply with the formal requirements of the New Jersey statute in order to permit the property to pass as personalty. The authorities touching upon the subject are in conflict.
There is considerable authority tending to support the view contended for by appellants. In 49 Harv. L. Rev. 994, 995 (1936) it is said:
"* * * the application of the law of the situs to determine the validity of the will's execution does not seem necessarily to require its controlling the validity of the gift after conversion. Cases allowing a conversion and thus making possible a gift of personalty, invalid as one of realty, would seem to indicate that a valid gift is not prerequisite to deciding the issue of conversion. Craig v. Leslie, 3 Wheat. 563 [4 L.Ed. 460] (U.S. 1818); Emery v. Cooley, 83 Conn. 235, 76 A. 529 (1910)."
And in 11 Am. Jur. 384 we find that:
"Where there is an equitable conversion of realty into personalty or personalty into realty, the property is, for the purpose of the choice of laws, to be regarded as of that species into which it is converted by the will."
In 18 C.J.S. Conversion § 39, p. 72, footnote 62, we note:
"Where testatrix directed that all assets be reduced to cash and distribution be made by executors, proceeds of sale of foreign realty were, under doctrine of equitable conversion, received by administrator with will annexed as personalty, and were required to be accounted for as such by administrator and his surety. In re Jackson's Estate, 252 N.W. 775, 217 Iowa 1046, 91 A.L.R. 937 [1934]."
In Penfield v. Tower, 1 N.D. 216, 46 N.W. 413 (Sup. Ct. 1890), the court stated that where the will directs the sale of real estate expressly, or by clear implication, such real estate is equitably converted into personalty from the time of the testator's death, the trust is a trust of personal property *44 as to such real estate, and its validity is to be determined, not by the laws of the situs of the real property, but by the laws of the jurisdiction in which the testator was domiciled at the time of his death. To the same general effect are Chamberlain v. Chamberlain, 43 N.Y. 424 (Ct. App. 1871); Hope v. Brewer, 136 N.Y. 126, 32 N.E. 558, 18 L.R.A. 458 (Ct. App. 1892); Ford v. Ford, 70 Wis. 19, 33 N.W. 188 (Sup. Ct. 1887); Ford v. Ford, 80 Mich. 42, 44 N.W. 1057 (Sup. Ct. 1890); Mount v. Tuttle, 183 N.Y. 358, 76 N.E. 873, 2 L.R.A., N.S., 428 (Ct. App. 1906). Cf. McCaughna v. Bilhorn, 10 Cal. App.2d 674, 52 P.2d 1025 (App. Ct. 1935). In 4 Page on Wills, 727 (3rd ed. 1941) we read that:
"The law of the place where the realty is situated determines whether testator's will effects an equitable conversion of realty into personalty. If it has such effect, the law of testator's domicile controls as to the validity of his bequests of such property, treated by the doctrine of conversion as personalty."
See also, 43 A.L.R.2d at pages 572, 576; Duckwall v. Lease, 106 Ind. App. 664, 20 N.E.2d 204 (1939); In re Good's Estate, 96 N.Y.S.2d 798, 804 (Sur. Ct. 1950), affirmed 278 App. Div. 806, 104 N.Y.S.2d 804 (App. Div. 1951), affirmed 304 N.Y. 110, 106 N.E.2d 36 (Ct. App. 1952).
However, the law does not favor conversion, Tiffany, supra (at page 510), and conversion will be presumed only so far as necessary to carry out the intention of the testator. Tiffany, supra, page 511. In 18 C.J.S. Conversion § 7, p. 47 we note:
"Application of the doctrine is limited to equity, wherein it is utilized to effect a fictional change of land to money or money to land pursuant to direction of the owner's will or contract; but the doctrine is not favored and will not be applied to defeat lawful dispositions of property, to circumvent public policy, nor in any other case where the result would be inequitable."
Strongly militating against a conversion in the instant case is this language from 11 Am. Jur. 384:
*45 "The question whether there is an equitable conversion by a will of personal into real property, or real property into personal property, or of real property in one state into real property in another does not affect the governing law so far as the formal validity of the will or the capacity of the testator is concerned, since the question presupposes the existence of a formally valid will executed by a competent testator."
Accord: In re Estate of Barrie, 240 Iowa 431, 35 N.W.2d 658, 663, 9 A.L.R.2d 1399 (Sup. Ct. 1949); McCaughna case, supra.
Referring to the McCaughna case, supra, 24 Calif. L. Rev. 605, 606 (1936) states:
"* * * It may be doubted whether the fiction of conversion should in any case be determinative of a conflict of laws question. Regardless of the intention of the owner as to the ultimate disposition of the land, so long as it remains land it is governed by the lex situs. That law must determine whether an equitable conversion takes place under the terms of the instrument. But the question of equitable conversion presupposes a formally valid will. [citing, Wharton, Conflict of Laws (3rd ed. 1905) 559(d)] Before this question can be raised, it must be determined whether there is a valid instrument, the terms of which may in equity work a conversion. If the instrument has this effect, the validity of particular bequests may be determined by the law governing the type of property resulting from the conversion. But the formal validity of a will must be determined without regard to the fiction of conversion."
See also, in accord with the above views, 41 Harv. L. Rev. 795; 18 C.J.S. Conversion § 4, p. 47; 43 A.L.R.2d at page 569, 578; Pond v. Porter, 141 Conn. 56, 104 A.2d 228 (Sup. Ct. Err. 1954); Equitable Trust Co. v. Ward, 29 Del. Ch. 206, 48 A.2d 519 (Ch. 1946); In re Burke, (1927) Sask. L. ___, 1 D.L.R. 318; In re Berchtold, (Law Reports 1923) 1 Ch. 192. In 43 A.L.R.2d at page 582 we note that:
"* * * it is a general rule that as to all matters concerning land which are governed by particular statutes or rules of law, or settled public policy, the law of the situs will be applied regardless of a direction in the will conceded or construed to be otherwise sufficient to effect an equitable conversion; because no provision in a foreign will, even if in terms it is made applicable to land in the *46 situs state and is sufficient as a theoretical proposition to effect an equitable conversion of it, will be permitted to operate so as to ignore or violate a local law."
There is other substantial authority for the view that the fiction of equitable conversion has no place in the conflict of laws. This view finds its strongest support in Professor Beale's work, Conflict of Laws, (1935), vol. 2, § 209.1, p. 936, where the author denied that the fiction "plays any part in the operation of the rules of Conflict of Laws," and that the state whose law applies to a transaction "is fixed by the Conflict of Laws in view of the realities." The author further states (at page 937) that while equitable conversion is a fiction of law, "the question whether land shall be dealt with as if it were personalty is not. That question is governed by the law of the state of situs of the land." Cases supporting this view are Equitable Trust Co. case, supra; Toledo Society for Crippled Children case, supra; In re Burke case, supra.
It has been said that the Restatement, Conflict of Laws, § 249, has adopted this view. That section reads: "The validity and effect of a will of an interest in land are determined by the law of the state where the land is." (Emphasis supplied). Comment (c) to that section, seemingly pertinent, reads: "A will of an interest in land is governed by the law of the state where the land is in spite of a direction in the will to convert the land into personalty." (Emphasis added.)
The Restatement would seem to be in agreement with Beale's view were it not for the ambiguity involved in the emphasized word. If the Restatement is referring to the local law of the situs, then clearly the Restatement has placed itself in Beale's camp and it holds that equitable conversion has no place in the law of conflict of laws. But if the Restatement refers to the entire law of the situs including its conflict of laws rules, then it has departed from Beale's view. If it has, then the law of the situs determines whether there is a conversion and, if so, determines whether its conflict of laws rules refer it to the lex domicilii  assuming the conversion is from realty to personalty.
*47 As I read the Restatement, it refers to the whole law of the situs, including its conflict of laws rules and, therefore, the fiction of equitable conversion has a place in the conflict of laws. This conclusion is reached when one reads section 249 along with section 8. The latter section states, in part:
"All questions of title to land are decided in accordance with the law of the state where the land is, including the Conflict of Laws rules of that state." (Emphasis supplied.)
Illustrative of the cases adopting this view are Duckwall case, supra and Despard v. Churchill, 53 N.Y. 192 (Ct. App. 1873).
It is clear that New Jersey has rejected Professor Beale's view that the doctrine of equitable conversion has no place in the conflict of laws. In Fidelity Union Trust Co. v. Ackerman, 121 N.J. Eq. 497 (Ch. 1937), the court was concerned with a will setting up a trust in real estate located in New York City. The testator was a resident of New Jersey. The will contained language which under New Jersey law clearly indicated a power of sale rather than a direction to sell. However, the New York court, as the court of the situs, construed the will to contain a mandatory direction to sell and said that an equitable conversion was effectuated. It then interpreted the provisions of the will and held that it provided for no accumulation of the income from the property. The Chancery Court held that the New York court, as the court of the situs, had jurisdiction to determine whether an equitable conversion was effectuated, but that once it determined that there was a conversion then the property, as personal property, was subject to the law of the domicile, i.e., New Jersey, and the New York court lacked jurisdiction to decide the accumulation question. The court said (page 509):
"The law of the situs of the land in the instant case merely regulated its sale, when that shall take place as provided in the will. It has nothing to do with the distribution of the proceeds of such sale among the legatees of the decedent. That distribution is regulated by the law of the testator's domicile, which, at the time of *48 the making of his will and of his death, was New Jersey. Jenkins v. Guarantee Trust & Safe Deposit Co. (Court of Errors and Appeals), 53 N.J. Eq. 194, 202; Swetland v. Swetland, 105 N.J. Eq. 608; affirmed, 107 N.J. Eq. 504. This is apparent not only from the language of the complaint filed in the New York proceedings which conceded that the trust was to be construed under the laws of the state of New Jersey, but also from the very decree which found an equitable conversion of realty into personalty. Comity between courts of sister states therefore demanded that the New York court leave the New Jersey question to the New Jersey courts for decision."
The Chancery Court held that the will did provide for an accumulation. The Court of Errors and Appeals then modified the decision. 123 N.J. Eq. 556 (E. & A. 1938). In its opinion the Court considered the matter entirely as a trust of real property which is governed by the law of the situs and held that the New York court had jurisdiction to construe the will and govern the trust and the income thereof. It avoided all mention of equitable conversion except to state that (at pages 560-561):
"* * * It was the decision of the Court of Chancery that the power of sale granted with respect to the New York real estate operated as an equitable conversion of that property, and that the disposition of the total net income was subject to the laws of this state and that the directions for accumulation of one-fourth as set forth in the seventh paragraph of the will governed, notwithstanding that the matter had been adjudicated to the contrary in a proceeding between the same parties in the courts of New York. * * *
The construction of the sixth paragraph of the will relating to a trust in New York real estate is subject to the New York law. The construction which the courts of that state have placed upon the will is the only construction possible if the will is to have validity in that state. The rights so established in that state may not be disturbed by the courts of this state. A right established under a will, in accordance with the law of the state where the land devised is situate, may not be disturbed by the courts of testator's domicile.
The rule stated in the American Law Institute, Restatement of Conflict of Laws, § 241, is as follows: `The validity of a trust of an interest in land is determined by the law of the state where the land is.' The New York courts having determined that question, the New Jersey courts are precluded from doing otherwise."
The court, in its entire opinion, does not use any language contrary to the views herein expressed. However, it does *49 quote from Beale's Conflict of Laws 975, § 251-4, as follows (at page 561):
"The devise of land under a trust to sell does not remove the land from the power of the state of situs. So in Lowe v. Plainfield Trust Co., 216 A.D. 72, 215 N.Y.S. 50, where a testator, wishing to evade the New York Mortmain Act, Decedent Estate Law § 17, left New York land to his executor to sell and give the proceeds to a charity, it was held that the devise was in all respects governed by the law of New York, and not, as a gift of personalty, by the law of the testator's domicil; and the gift therefore failed. So where a person who died domiciled in a foreign country left an interest in the proceeds of sale of English freeholds, which were subject to a trust for sale but not yet sold, it was held that this was a gift of an interest in an immovable, and therefore governed by the lex situs."
This language would appear contrary to the conclusions reached by me. However, other than this quote the court proceeds as if the issue of equitable conversion were not involved. It cites and discusses such cases as Clarke v. Clarke, 178 U.S. 186, 20 S.Ct. 873, 44 L.Ed. 1028 (1900), in support of the general rule that the validity and effect of a will of an interest in land are determined by the law of the state where the land is. Restatement, Conflict of Laws, § 249. (See also § 241 stating: "The validity of a trust of an interest in land is determined by the law of the state where the land is.") Of course, the correctness of this proposition is beyond dispute. But this is far from saying that once the lex situs has determined that there is an equitable conversion then that law still governs the disposition of the realty-turned-personalty.
It must, however, be conceded that the actual holding, even though not the language used, may be contrary to the conclusions herein. This is because of the fact that the New York court (as the court of the situs) held that there was an equitable conversion and yet our Court of Errors and Appeals held that New York still governed the disposition. But this meaning is not expressed in the court's opinion. Actually, the court nowhere indicates its awareness of the fact that the New York court found a conversion. *50 It only said that "It was the decision of the Court of Chancery that the power of sale granted with respect to the New York real estate operated as an equitable conversion of that property, * * *." (123 N.J. Eq. at page 560).
The Ackerman case may be distinguished on several grounds. One is that the court did not directly consider the conversion question. Another is that the rule laid down therein may be limited to trusts of real property, as, even with a conversion, the res still remains within the situs until actually removed therefrom. Cf. Swetland v. Swetland, 105 N.J. Eq. 608 (Ch. 1930), affirmed, 107 N.J. Eq. 504 (E. & A. 1930); Hutchison v. Ross, 262 N.Y. 381, 187 N.E. 65, 89 A.L.R. 1007 (Ct. App. 1933); Cavers, "Trusts Inter Vivos and the Conflict of Laws," 44 Harv. L. Rev. 161 (1930); Selected Readings on Conflict of Laws 937 (1956); Note, "Trusts of Personalty and Conflict of Laws," 89 U. Pa. L. Rev. 360 (1941), Selected Readings, supra, 1060. Cf. also, Restatement, Trusts, § 131; Restatement, Conflicts, §§ 243, 244, 298, 299.
Assuming, however, that the Ackerman decision is not distinguishable, it presents no insurmountable obstacle. A later case, Philadelphia Home for Incurables v. Philadelphia Saving Fund Society, 126 N.J. Eq. 104 (Ch. 1939), affirmed, 129 N.J. Eq. 243 (E. & A. 1941), is directly in support of the principle that even though realty is located in one state, if there is language effectuating an equitable conversion the law of the domicile and not the law of the situs governs. In that case decedent was domiciled in New Jersey, the real estate was located in Pennsylvania. The Chancery Court found (126 N.J. Eq. at page 114) that the decedent's will effectuated an equitable conversion by necessity and that "distribution will be in accordance with the laws of the State of New Jersey." It also stated (pages 114-115):
"It would seem that the cases of Jenkins v. Guarantee Trust and Safe Deposit Co., 53 N.J. Eq. 194; 32 A. 208, and Westfield Trust Co. v. Beekman, 97 N.J. Eq. 140; 128 A. 791, answer the question in favor of the Society. In the Jenkins case, the Court of Errors and Appeals held * * *: `The law of the situs of this *51 land merely regulates its sale, when that shall take place as provided in the will, and the passage thereof to the purchaser. That is all. It has nothing to do with the distribution of the proceeds of such sale among the creditors and legatees of the decedent. That distribution is regulated by the law of the testatrix's domicile, which, at the time of the making of her will and of her death, was Pennsylvania.'

* * * * * * * *
Applying the law as above quoted, we find that there was no positive direction to sell in the Breintnall will, but that there was an authority to sell, in the discretion of the executors; that there was such a sale or sales and that the proceeds in the hands of the executors after the sale of the real estate became personalty and are liable for the payment of decedent's debts.
It would seem, therefore, that the Fiduciaries' Act of Pennsylvania is not applicable to the proceeds of the sale of Pennsylvania real estate now in the hands of the executors, but that these monies are to be considered as personalty and to be distributed in accordance with the New Jersey law. But even if the law of Pennsylvania governed, I think the Breintnall will accomplished an equitable conversion."
The court affirmed substantially on the basis of the Chancery Court's opinion. The court said (129 N.J. Eq. at page 245):
"After full consideration of the matter, we are entirely satisfied that the decree under review should be affirmed, and in the main for the reasons given in the full and satisfactory opinion of the court below."
Then at page 246:
"As to the matter of equitable conversion, the point is based on the assumption that because certain other land sold by the executors and turned into money was situate in Pennsylvania, the question of conversion vel non is to be determined by lex loci rei sitae. The Vice Chancellor, in view of the language of the will, held otherwise, and we agree with him. But in any event, as he points out, there was an actual sale of those other lands and conversion into money, and this for the natural and necessary purpose of paying debts and legacies; so that, to adopt this language, `the proceeds in the hands of the executors after the sale of the real estate became personalty and are liable for the payment of decedent's debts.' * * * We agree also that the Fiduciaries Act of Pennsylvania is inapplicable to these proceeds, now personalty, in the hands of the executor of a deceased resident of this State, administering the estate under the supervision and control of our courts."
*52 Therefore, either the Ackerman case is distinguishable from the Philadelphia Home case or it was impliedly overruled by the later case which is in accord with the views expressed in this opinion.
Fischer v. Stuart, 104 N.J.L. 78 (E. & A. 1927), also contains language in accord with the Philadelphia Home rule. There, the question was whether the New York or New Jersey statute of perpetuities was applicable to the provision of a will devising real estate where the property was located in New Jersey. The court said (at page 81):
"Therefore, in the absence of any specific direction by the testator working an equitable conversion of the lands thus devised, it becomes manifest that the statute of perpetuities of the state of New York has no application to the situation, and that the title of the plaintiff under the will must be determined by the law of this state; the result being that the judgment under review must be reversed." (Emphasis added.)
Thus, I would read the Philadelphia Home and Fischer decisions to hold that the doctrine of equitable conversion does have a place in the conflict of laws at least so far as New Jersey is concerned.
To pose a simple set of facts, if a testator, domiciled in New York and owning real estate situated in New Jersey, left a will directing that the land be sold and the proceeds distributed to certain named beneficiaries, there seems little doubt that New Jersey would hold the land was equitably converted and the proceeds should be distributed as personalty under New York law. But it is emphasized that this rule applies only where the words of the will are such as to effectuate a conversion under the law of the situs.
In the holographic will here involved there is clearly an absolute direction to sell. The language used is sufficient to work an equitable conversion under New Jersey law as the lex sitae. Kuiken case, supra. I would hold that it is not necessary that such a will comply with the formalities required of a will of real estate in this State. "It is as if the testator had taken that interest or estate in the land within his grasp, and transformed it under his own hand *53 into another kind of property." Allen v. Watts, 98 Ala. 384, 11 So. 646, 649 (1892). In that case the Supreme Court of Alabama continued:
"* * * It is none the less a gift of personal property from the beginning because there is a postponement of the time when the legatees can come into the enjoyment of the legacies. A contingency as to the time when the actual change in the form of the property shall take place does not lessen the effect of the act of the testator in making the land money by directing the appropriation of the proceeds of its sale to the satisfaction of a gift of money. If the testator is the owner in fee of the land, he may carve out any interest or estate he pleases, and direct that alone to be sold, and the proceeds applied on a legacy. As to the remaining interest or estate in the land, to which the testator does not undertake to impart the qualities of money, the land continues land, with all the incidents which attach to such estate at law."
Having determined that there is a conversion, the law of the testator's domicile is the governing law. "The law of the domicile is also applicable, for, assuming that there is a conversion, the domiciliary law governs the validity and effect of a gift of personalty." 7 New Jersey Practice, supra, 436.
I next discuss the trial court's reference to dominion. The Chancery Court in the Jenkins case, supra (53 N.J. Eq. at page 198), said: "She could not make the conversion without exercising dominion over the land, and that dominion she must and could exercise according to the laws of New Jersey." That this language was dictum is made clear by the opinion of Mr. Justice Gummere writing for the Court of Errors and Appeals (53 N.J. Eq. 200), and the language at page 202 is an implied rejection of this dictum. But the County Court recognized the immediate appeal of the argument that a testator should not be allowed to exercise "dominion" over New Jersey real estate without complying with the laws of this State. However, equally appealing is the principle that a will should be so construed as to be upheld if possible and the intent of the testator effectuated. Watson case, supra (24 N.J. at page 218). When one considers the relative unimportance of requiring a will of *54 land to comply with the formal requirements of the situs when compared with the value of upholding the will and the testator's intent, the latter principle is clearly more persuasive. Of course I do not imply that, assuming N.J.S. 3A:3-2 to be applicable, that it should not be literally complied with. In re Hale's Will, 21 N.J. 284 (1956).
I have no intention of upsetting any of the ancient common law notions concerning land. There is no doubt that we are bound by the rule that the law of the situs governs the disposition of real property, or, as expressed by Chief Justice Weintraub in Starr v. Berry, 25 N.J. 573, 589 (1958), "legal and equitable rights in real property shall be adjudged at the situs." However, we should avoid any unnecessary worship of formalities.
Also, I note that 14 jurisdictions have adopted the provisions of section 7, Model Execution of Wills Act (1940), 9A U.L.A. 347-348 (1957), which section is similar to the Uniform Wills Act, Foreign Executed (1910):
"A will executed outside this state in a manner prescribed by this Act, or a written will executed outside this state in a manner prescribed by the law of the place of its execution or by the law of the testator's domicile at the time of its execution, shall have the same force and effect in this state as if executed in this state in compliance with the provisions of this Act."
This illustrates the trend which is to minimize the importance of formalities.
Furthermore, I feel that the dictum of the Chancery Court in the Jenkins case is not at all contrary to the result reached here. A reasonable interpretation is that the question of conversion must be determined according to the laws of this State where the land was located. But once having decided that question in favor of conversion, the above-quoted language does not mean that there must be compliance with the formalities of the lex sitae. Alternatively, the quoted language from the Jenkins opinion in the Chancery Court may be read in the same manner that we read Restatement of Conflicts, supra, § 249, i.e., interpreting the word "laws" *55 to mean the entire law of this state including its conflict of laws rules.
I next discuss the problem of the devolution of title. In most equitable conversion cases the testator first establishes a purpose in his will and then directs that land be sold and the proceeds used to fulfill that purpose. In such cases the rule is stated in Fidelity-Philadelphia Trust Co. v. Harloff, 133 N.J. Eq. 44, 57-58 (Ch. 1943):
"It is the well settled rule in our state that where land is directed to be converted into money by the executors and the proceeds distributed in a manner designated by the testator, such proceeds are to be regarded as gifts of money to the distributees and not as devises of real estate. [citations.]
It is also determinate that until the power of sale is exercised the legal estate descends to and vests in the heirs-at-law of the testator as tenants in common, such heirs taking the legal title charged with the trust created by the will. [citations]"
The estate which the heirs take at the testator's death is an actual estate which is alienable, devisable and descendable as lands. Morse v. Hackensack Savings Bank, 47 N.J. Eq. 279 (E. & A. 1890). It is also clear that, if this general rule applies in the instant case, then the holographic will must fail as the legal interest in the realty could not pass to the heirs pending the sale unless the will conformed with the requirements of this State to pass an interest in realty. However, on the basis of the discussion below, I would hold that no legal interest in land passed to the heirs pending the sale, but the legal interest in the personalty (consisting of the proceeds which would come into being after the sale) vests in the next of kin subject to the equitable interest of the named legatees.
Authorities in this and other jurisdictions hold that, where the direction to sell is not for a specific purpose but is a direction to sell in all events, then the land is considered as converted into money from the death of the testator and upon lapse of the gifts the proceeds pass to the next of kin and not to the heirs-at-law. Hand v. Marcy, 28 N.J. Eq. 59 (Ch. 1877); Welsh v. Crater, 32 N.J. Eq. 177 (Ch. *56 1880); Roy v. Monroe, 47 N.J. Eq. 356 (Ch. 1890); Moore v. Robbins, 53 N.J. Eq. 137 (Prerog. Ct. 1894); Kuiken v. Simonds, 1 N.J. Super. 401 (Ch. Div. 1948), affirmed on opinion, 4 N.J. Super. 135 (App. Div. 1949), affirmed, 3 N.J. 480 (1950); Annotation, "Equitable Conversion by will as affected by total or partial failure of testator's purpose" 144 A.L.R. 1236, 1237-1241. In Hand v. Marcy, supra, testator gave to his executors absolute direction to sell certain land. He then gave certain pecuniary legacies, and made provisions for the purchase of a tombstone for his grave and for the fencing of the graveyard, then gave and bequeathed the residue of his estate "to Samuel S. Marcy, Lucy E. Edwards and Mary W. Stevens, their heirs and assigns, to be equally divided between the said Samuel S. Marcy, Lucy E. Edwards and Mary W. Stevens." The lastnamed legatee died in the lifetime of the testator. The court stated that the questions propounded are:
"To whom does the share of the residue which thus lapsed go  to the surviving residuary legatees, or to the children of Mary W. Stevens, or to the next of kin and heirs-at-law, or next of kin only of the testator? and if to the next of kin and heirs-at-law, or to the next of kin only, is the widow of the testator entitled to any part thereof, and if so, to what part?"
It then held:
"The testator died intestate as to that share, and it goes to his next of kin. Though composed partly of the proceeds of the testator's real estate, it nevertheless goes wholly to his next of kin, for the direction to convert was absolute and unqualified. The testator intended that the land should be turned into money in any event, and at all events."
And in Kuiken case, supra, the executors were directed by the testator to sell the real estate at the expiration of the life estate and distribute the proceeds among the named beneficiaries. A partition suit was brought by plaintiff. The Chancery Division denied partition, holding that, under the will, the gifts received by the beneficiaries were gifts of money rather than real estate and were therefore not subject *57 to partition. The trial court stated (1 N.J. Super. at page 405):
"The gift to Joseph Simonds is to be regarded as a gift of money, not real estate. Upon his death his share descended to his next of kin, not his heirs at law. The complainant must enforce her claim against that share as personalty. Triplett v. Ivins, 93 N.J. Eq. 202."
But Cf. Canfield v. Canfield, 62 N.J. Eq. 578 (Ch. 1901).
If the testatrix here had directed that certain specific amounts should be paid to each of certain named legatees, and then directed that her real estate be sold for the purpose of acquiring the funds to fulfill the named purpose, then, in such case the direction to sell would not have been "in all events" and this holographic will would not be held to convert the property as the legal title in the realty could not pass to the heirs absent the requisite formalities of the lex sitae. However, the direction to sell being in the nature of an order to sell "in all events" no interest in realty passed and the conversion was properly effectuated. The legal interest passed to the next of kin and the equitable interest to the named legatees.
I would reverse and remand for action not inconsistent with this opinion.